**SECOND NATIONAL BUILDING AND LOAN, INC., a Maryland corporation, Plaintiff,**

v.

**The SUSSEX TRUST COMPANY, a State Chartered Bank, Defendant.**

Superior Court of Delaware, Sussex County.

Submitted: June 28, 1985.

Decided: Dec. 12, 1985.

On Motion for Reargument Jan. 9, 1986.

Barbara-Cherrix O'Leary of O'Leary Law Offices, Rehoboth Beach, for plaintiff.

John A. Sergovic, Jr. of Tunnell & Raysor, Georgetown, for defendant.

CHANDLER, Judge.

This lawsuit arises out of a controversy over the appropriate procedure for collecting realty transfer taxes when a transfer of property results from a judicial sale. Plaintiff Second National Building and Loan, Inc. ("Second National") seeks to recover $2100, claiming that the Defendant Sussex Trust Company ("Sussex Trust"), as the successful bidder at a judicial sale, wrongfully refused to pay its share of the transfer tax *in addition* to the bid price. In its answer, Sussex Trust asserts *inter alia* that its share of the tax was *included* as part of its successful bid.

Presently before the Court is Sussex Trust's motion for summary judgment, as well as Second National's motion to amend the complaint and to join additional defendants. This is the Court's decision with respect to the pending motions.

I.

■ The motion for summary judgment raises an interesting and novel question for this Court.[1] In short, the motion places in issue the legality of the custom or practice of the office of the Sheriff in Sussex County to conduct mortgage foreclosure sales upon notice that the successful bidder will be required to pay, over and above the

---

1. The issue presented here was alluded to, but not decided, in a recent unreported opinion. *Wilmington Trust Co. v. Jones,* Del.Super., C.A. No. 84L–FE–57, Taylor, J. (April 25, 1985).

winning bid price, one-half of the assessed realty transfer tax. Under this same custom, the seller's share of the tax is deducted from the sale proceeds. This controversy arose, however, when Sussex Trust refused to pay any sum in addition to its bid price, asserting that a state statute, 30 *Del.C.* § 5404, requires the full amount of the transfer tax to be deducted by the Sheriff from the winning bid price.

All of the facts material to a resolution of the summary judgment motion are uncontested.

Second National held a second mortgage on property in Rehoboth Beach, Delaware. After the first mortgage holder commenced foreclosure proceedings, the property was sold under the first lien at a Sheriff's sale held on August 19, 1983. In accordance with the standard form used in the Sussex County Sheriff's Office, the sale bill provided:

> TERMS FOR REAL ESTATE: 20 percent of the purchase money will be demanded on the day of sale, the balance to be paid on or before September 5, 1983. Sale subject to confirmation by the Superior Court and also subject to a 2 percent Delaware Realty Transfer Tax; I percent to be paid by the Seller and I percent by the Purchaser. The Purchaser will be required to pay the cost of the deed. If the Purchaser fails to comply with these terms the percentum paid on the day of sale will be forfeited.

Sussex Trust was the successful bidder at the sale, purchasing the property for $140,000. The sale was confirmed on September 9, 1983. Contrary to the terms of the sale bill, however, the Sheriff deducted the full two percent ($1400) State transfer tax, as well as a one percent ($700) transfer tax levied by the City of Rehoboth Beach, from Sussex Trust's winning bid price.[2] Because the full transfer tax was deducted

from the bid price, the net distribution to the second mortgage holder, Second National, was $2100 *less* than it would have been had the Sheriff required Sussex Trust to pay the additional $2100 as provided by the sale bill terms.

Sussex Trust contends that the practice of the Sheriff's Office to collect from the purchaser one-half of the transfer tax in addition to the bid price is contrary to the express requirement of 30 *Del.C.* § 5404. Section 5404, which outlines the method by which the transfer tax is paid where a transfer results from a judicial sale, provides:

> The tax imposed by this chapter shall be fully paid and have priority out of the proceeds of any judicial sale of real estate before any other obligation, claim, lien, judgment, estate or costs of the sale and of the writ upon which the sale is made, and the Sheriff, or other officer conducting said sale, shall pay the tax imposed out of the first moneys paid to him in connection therewith; provided, that if prior to delivery of the deed pursuant to the said sale, the Purchaser shall deliver to the Sheriff an affidavit as described in § 5409 of this Title that the transfer is exempt from tax under paragraph P of subdivision (1) of § 5401 of this Title, the Sheriff shall not pay the tax, but shall deliver the affidavit to the Recorder of Deeds as agent for the Department of Finance. (30 *Del.C.* § 5404, 1953; 55 Del.Laws, c. 109, § 1; 62 Del. Laws, c. 316, § 2.)

This language, argues Sussex Trust, specifies not only that the tax shall be given priority in payment, but also identifies the bid or purchase price as the *exclusive* source of funds from which the Sheriff "shall pay the tax imposed." For that reason, Sussex Trust claims it was legally

---

**2.** Although not material to my decision, it is alleged that the Sheriff departed from the terms of the sale bill because he was advised by a representative of Sussex Trust that it would not pay the additional amount over its bid price, asserting that its bid price *included* the transfer

tax. However, there is no assertion by Sussex Trust that it was not advised or made aware of the specific terms and conditions stipulated by the Sheriff's sale bill. Nor does Sussex Trust argue that the terms of the sale bill were ambiguous.

entitled to refuse to pay the additional one percent under the advertised terms of sale and, moreover, is entitled to judgment as a matter of law in this proceeding.

On the other hand, Second National contends, alternatively, that (a) § 5404 only establishes a statutory *priority* for payment of the tax and (b) the notice of sale terms in the sale bill, as published by the Sheriff's office, creates an independent contractual covenant governing the sale which was breached when Sussex Trust failed to pay the additional $2100 as its share of the tax imposed. *Cf. Pleasant Valley Campground, Inc. v. Rood*, N.H. Supr., 120 N.H. 86, 411 A.2d 1104 (1980). (Special announcement at foreclosure sale regarding items included with the sale of realty amounted to a parole agreement between vendor and vendee).

Although Sussex Trust's argument has some surface appeal, I am mindful of the familiar rule of statutory construction that a statute should be read and construed as a whole within the context of the entire legislative scheme. It would be improper, therefore, to read 30 *Del.C.* § 5404 in isolation from the other sections of the Act of which it is but one part. *George & Lynch, Inc. v. Division of Parks and Recreation*, Del.Supr., 465 A.2d 345, 350 (1983); 2A Sutherland, Statutes and Statutory Construction, § 46.05 (4th ed. rev.1984).

As earlier noted, § 5404 concerns payment of the transfer tax where the transfer results from a judicial sale. The tax itself, fixed at the rate of two percent of the value of the property transferred, applies to "every person who makes, executes, delivers, accepts or presents for recording" a document as defined in § 5401(1). 30 *Del.C.* § 5402(a). However, § 5402 was amended in 1971 by 58 Del. Laws c. 297 to provide:

Said tax to be apportioned equally between grantor and grantee.

The purpose of the 1971 amendment was to provide that the tax assessed on every transfer is to be divided equally between the transferor and transferee. I also note,

however, that § 5412, which was part of the original enactment of chapter 54 but which was not mentioned in the 1971 amendment, places the burden of paying the tax upon the grantor unless there is an "agreement to the contrary."

By its own terms § 5404 does not purport to prohibit the Sheriff from conducting a judicial sale of property upon notice that the buyer will be required to pay one-half of the transfer tax in addition to the bid price. The purpose of § 5404 is to assure that the tax is collected. This is achieved by elevating the tax above any other obligation, claim, lien, judgment, estate or costs of the sale. Section 5404 specifically directs the Sheriff, or other officer conducting the sale, to collect the tax out of the first moneys paid *in connection with the sale.* Clearly, the additional sum collected from the successful bidder constitutes moneys paid *in connection* with the sale.

Moreover, nothing in § 5404 indicates how the tax shall be paid by the grantor and grantee. Nor does the statutory language suggest an intent to limit the terms or conditions upon which a judicial sale of property may be advertised and held, so long as the tax is collected before other costs are deducted. In sum, I believe the Sheriff may follow the practice of conducting a foreclosure sale upon notice that a successful bidder must pay one-half of the transfer tax over and above the winning bid price.

Finally, it also seems to me that Sussex Trust's argument is based on an unnecessarily static conception of the phrase "sale proceeds." Sussex Trust appears to equate "proceeds of sale" with "bid price", from which it follows that all taxes, costs and other obligations must be deducted from the winning bid. But in my opinion such an equation does not follow as a logical necessity from the statute. Although the phrase sale proceeds is not statutorily defined, I believe it is consistent with the statutory scheme for the winning bid price, as later increased by the buyer's share of

the tax, to qualify as sale proceeds. In short, the Sheriff collects the tax from the augmented bid price which comprises the sale proceeds.

For all of the above reasons, I conclude that the Sheriff is not precluded by 30 *Del.C.* § 5404 from conducting a judicial sale upon notice to the public, as occurred in this case, that the successful purchaser must pay one-half of the transfer tax in addition to the bid price.

## II.

Sussex Trust also argues that because this Court has already confirmed the sheriff's sale, Second National is barred by res judicata from litigating the instant action. A judicially created doctrine, res judicata is designed to assure finality of judgments by barring the maintenance of a second lawsuit when a court of competent jurisdiction has already rendered a final judgment upon the merits in the same matter involving the same party or his privies. *See Epstein v. Chatham Park, Inc.,* Del. Super., 153 A.2d 180, 184 (1959). A party invoking the doctrine of res judicata must show that all of the elements of res judicata exist; that the parties, or their privies, to the original action were the same as the parties to the instant litigation; that the cause of action, or the issues necessarily decided, in the prior action were the same as in the present action; and that the issues or causes in the prior action were decided adversely to the plaintiff in the case at bar. *See, e.g., Maldonado v. Flynn,* Del.Ch., 417 A.2d 378, 383 (1980); *Rumsey Electric Co. v. University of Delaware,* Del.Super., 334 A.2d 226 (1975).

This is the first instance in which the parties here have been before the Court concerning the alleged breach by Sussex Trust of a condition or term of the August 19, 1983, sheriff's sale. There is no claim by Second National that the sale was improperly noticed or advertised, that the sale brought a grossly inadequate price, or that fraud, mistake or misconduct occurred in the sale. Issues of that sort are necessar-

ily decided when a sheriff's sale is confirmed, and cannot be controverted collaterally by a separate, later action. Volume 2, Woolley, Del.Practice § 1107. But Second National's complaint raises no objection to the validity of the sale. Nor will the relief it seeks require a redetermination of issues necessarily decided in the confirmation proceeding. Finally, the parties to this action are not the same parties who appeared before this Court with respect to the foreclosure proceeding and subsequent confirmation of sale.

The unreported Supreme Court decision cited by Sussex Trust, *First Mortgage Company of Pennsylvania v. Federal Leasing Corporation,* Del.Super., 419 A.2d 786 (1985) (ORDER) is inapposite. In that case the Superior Court, in a bifurcated proceeding, had determined issues regarding fraud and the priority of competing mortgages held by Federal Mortgage Company of Pennsylvania (FMCP) and Federal Leasing Corporation (Federal Leasing). Indeed, FMCP had intervened in an action brought by Federal Leasing, claiming that its mortgages on the debtor's property had priority over Federal Leasing. This Court determined the issues of priority adversely to FMCP, a determination that was affirmed by the Supreme Court. Later, FMCP filed a complaint in the Court of Chancery seeking to enjoin Federal Leasing from foreclosing on its mortgages based on a claim that the mortgage procedures in this Court were not followed. The Court of Chancery granted summary judgment on grounds of res judicata, which was affirmed by the Supreme Court since the parties were the same and the issues presented in the Chancery action arose from the same transaction which formed the basis of the action already decided in this Court.

*Federal Leasing Corporation, supra,* is not helpful here where neither the parties nor the issues have previously been before the Court. Accordingly, in the circumstances of this case Sussex Trust's effort to invoke the doctrine of res judicata, as

well as its motion for summary judgment, must fail.

### III.

Second National has moved to amend its complaint and join additional defendants. The additional defendants will include the Sheriff for Sussex County in office at the time the disputed sale was held and a party to whom Sussex Trust transferred its interest in the sale property.

Sussex Trust has indicated that in the event its motion for summary judgment is denied, it withdraws its opposition to Second National's motion to amend and to join defendants. Based on that representation, Second National's motion will be granted.

IT IS SO ORDERED.

### ON MOTION FOR REARGUMENT

Before the Court is defendant Sussex Trust's motion for reargument which seeks reconsideration of an opinion of this Court. By letter the plaintiff Second National contends that there are no valid grounds for granting reargument but, in the event reargument is permitted, requests that it be deferred until trial.

Reargument is warranted, Sussex Trust claims, because the Court, contrary to the "plain meaning" rule, impermissibly engaged in statutory construction with respect to a statute, 30 *Del.C.* § 5404, that Sussex Trust views as "clear on its face." Evidently Sussex Trust believes the Court resorted to some sort of extrinsic evidence as an aid to understanding the import of § 5404, an exercise that of course would be improper without a prior showing of uncertainty in the text.

Without restating all of my earlier discussion of § 5404, however, it should be apparent that my December 12 opinion concluded two things. First, on its face § 5404 merely requires that the state transfer tax be given priority in payment. The text of § 5404 does not speak to how or whether the tax shall be apportioned between the purchaser and seller. Neither does the text proscribe or limit the terms upon which the Sheriff may advertise a foreclosure sale. All that the terms of § 5404, viewed in their common everyday sense, direct is that the Sheriff collect the transfer tax out of the first moneys paid in connection with the sale. Nevertheless, Sussex Trust insists that this simple and direct language means that the purchaser's winning bid price must always serve as the exclusive source of funds from which the Sheriff collects the tax. It seems to me that this argument is strained and forces a reading of the statute that its own terms simply will not reasonably support. Had the General Assembly intended or wanted to limit the Sheriff's ability to advertise and conduct a judicial sale of property in the manner advocated by Sussex Trust, it could have easily done so in words that would have made that intention crystal clear. But language to that effect is not found in § 5404 and, therefore, I am not inclined to engraft such a special meaning on the words actually used.

The second conclusion reached in my December 12 opinion was that reading § 5404 as a priority provision is not only sensible based on the plain words of the text, but also accords with the general purpose of the Legislature as evidenced by other parts of the overall statutory scheme. It was in the context of this discussion that there was reference to reading § 5404 as one part of an entire legislative scheme. Legislation of any consequence is typically a complex of parts. Those who draft and shepherd through a measure create some pattern of policy, so that there is ground for presuming that their intent in particular lies in the relations of those particulars to the surrounding pattern. Other sections of the state transfer tax statute make it equally clear that the tax, to be imposed upon every person who presents a document of title for recording, is to be apportioned equally between the grantor and grantee. 30 *Del.C.* § 5402(a). No document of title may be recorded unless the tax is paid. *Id.* Reviewing all of the provi-

sions of the statute together, it seems indisputable to me that the Legislature's overriding objectives are to be clear about when the tax is imposed and to assure that the tax is collected. And reading § 5404 as a priority provision is thus absolutely consistent with the other sections of the statutory scheme. In any event, I cannot see how reading § 5404 in the light cast by other parts of the same act is error warranting reargument.

My view of 30 *Del.C.* § 5404 is also supported, albeit obliquely, by a 1978 decision of then Judge Christie. In *Seacoast Products, Inc. v. Star Enterprises, Ltd., et al.*, Del.Super., C.A. No. 43—1978, Christie, J. (September 15, 1978), the constitutionality of the transfer tax was challenged as it applied to judicial foreclosures. Defendant Fisher Enterprises, Inc. (Fisher) purchased certain property at a foreclosure sale. Seacoast Products, Inc. (Seacoast) held a purchase money mortgage on the property with an unpaid balance of $1,000,000. Following Fisher's purchase of the property at foreclosure sale for $1,300,000, the State of Delaware demanded that a tax in the amount of $26,000 (2%) was due on account of the sale. Fisher, Seacoast and the Farmers Bank of Delaware (holder of an unpaid second mortgage) challenged the constitutionality of the tax and also argued that the tax did not apply to foreclosure sales.

Judge Christie held that the tax did apply to judicial sales pursuant to § 5404 and rejected the constitutional challenge, noting that the tax did not constitute an invasion of the judicial province. Although his reference was dictum, it is noteworthy that Judge Christie specifically referred to § 5404 as simply requiring that the tax be given priority in payment over other taxes or costs associated with the sale. *Id* at page 3. Moreover, nothing in Judge Christie's opinion suggests that § 5404 was understood to restrict the terms upon which the Sheriff may advertise a judicial sale.

For all of the reasons set forth herein, Sussex Trust's motion for reargument is denied.

### ORDER

For the reasons set forth in the court's supplemental opinion dated January 9, 1986, it is ordered that the motion for reargument filed in the above action by the defendant Sussex Trust Company is denied.