GEORGE & LYNCH, INC., a Delaware corporation, Plaintiff Below, Appellant,

v.

The DIVISION OF PARKS AND RECRE-ATION, DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMEN-TAL CONTROL, an agency of the State of Delaware, Defendant Below, Appel-lee.

Supreme Court of Delaware.

Submitted: June 6, 1983.

Decided: June 6, 1983.

Opinion Released: July 7, 1983.

Daniel F. Wolcott, Jr. (argued) and Susan C. May, Potter, Anderson & Corroon, Wilmington, for appellant.

June D. MacArtor, (argued), Deputy Atty. Gen., Wilmington, for appellee.

Before HERRMANN, C.J., MOORE and CHRISTIE, JJ., BIFFERATO and WALSH, Judges (by designation of the Chief Justice pursuant to Del. Const. art. IV, § 12); sitting as Court en Banc.

CHRISTIE, Justice:

This is an appeal from a decision of the Court of Chancery denying the motion of George & Lynch, Inc. for an injunction against the award of a public works contract by the Delaware Department of Natural Resources and Environmental Control.[1] George & Lynch had submitted the low bid on the project, but the Department indicated that it intended to award the contract to a higher bidder on account of alleged defects in the George & Lynch bid. The Court of Chancery refused to enjoin the award of the contract, and George & Lynch appealed to this Court.

The Department solicited bids, by advertisement in local newspapers in February 1983, for a project to improve certain public sewage treatment facilities. The date for the submission of bids was set for March 10, 1983, and the date for a prebid meeting of interested bidders was set for March 2, 1983. The bid documents specified that all bids must include a list of subcontractors for each named work specialty. The project included construction of new structures to house pumps, equipment, and an office.

George & Lynch, a Delaware contractor, did not attend the prebid meeting, but it did submit the low bid of $1,413,489.75. The second low bid was $41,448.25 higher. In its bid, George & Lynch wrote "none" in the space provided to list the electrical subcontractor, thus indicating that it did not intend to subcontract the electrical work but would perform that job itself. George & Lynch admits that this was incorrect, and that it never intended to do the electrical work itself. In fact, it was still negotiating with electrical subcontractors at the time its bid was submitted. After the bids were submitted and opened, another bidder lodged a protest with the Department alleging that George & Lynch's bid did not conform to the provisions of 29 *Del.C.* § 6911(1) since George & Lynch was not licensed to do electrical work.

The statutory provisions pertinent to this appeal are found in Chapter 69 of Title 29 of the Delaware Code. That chapter governs the award of contracts for public improvements. The provisions of 29 *Del.C.* § 6907 require that such contracts must be awarded to the responsible vendor who submits the lowest bid.[2] Section 6911, pertain-

---

1. As a result of the time constraints imposed by the federal grant which funds this public works contract, we heard this case as an expedited appeal and announced our decision from the bench. This opinion amplifies that decision.

2. 6907. *Opening of bids; award of contracts; right to reject bids.*

ing to any public works contract for the construction, alteration, or repair of any public building, states as follows:

(1) Such contract shall be awarded only to a bidder whose bid is accompanied by a statement containing, for each subcontractor category set forth in the "listing" as provided in § 6904(b) of this title, the name and address (city or town and state only—street number and p.o. box addresses not required) of the subcontractor whose services he intends to use in performing the work or in performing the work and providing the material for such subcontractor category. No bidder for such a contract shall list himself in any accompanying statement as the subcontractor of any part of the public building unless the bidder, in addition to being licensed as a contractor of the State, shall also be recognized in the industry not only as a prime contractor but also as a subcontractor or contractor in and for any such part or parts of such work so listed in such accompanying statement.

(2) Neither the State nor county nor public school district nor any political subdivision of the State, nor any agency of any of them, shall accept any bid for such a contract or award any such contract to any bidder, as the prime contractor, if the bidder has listed himself as the subcontractor for any subcontractor category set forth on the "listing" as provided in § 6904(b) of this title, unless it has been established to the satisfaction of the awarding agency that the bidder has customarily performed the specialty work of such subcontractor category by artisans regularly employed by the bidder in his organization, that the bidder is duly li-

censed by the State to engage in such specialty work, if the State requires such licenses, and that the bidder is recognized in the industry as a bona fide subcontractor or contractor in such specialty work and subcontractor category. Illustrative only (and not intended to be exhaustive) of typical subcontractor categories involving their own respective types of specialty work are plumbing, electrical wiring, heating, roofing, insulating, weather stripping, masonry, bricklaying and plastering. The decision of the awarding agency as to whether a bidder who lists himself as the subcontractor for a subcontractor category set forth in the "listing" as provided in § 6904(b) of this title for such subcontractor category shall be final and binding upon all bidders, and no action of any nature shall lie against any awarding agency because of its decision in this regard.

This section requires that subcontractors for specialty work on public building contracts be named in the bid papers if the general contractor is not going to perform that work, and such listings are conditions precedent to acceptance of a bid by a State agency.

The terms "public works" and "public buildings" are statutorily defined in 29 *Del.C.* § 6901:

(3) "Public works contract" means any contract for the construction, reconstruction, alteration or repair of any public building, road, street, highway or other public improvement, the cost of which will be paid with public funds.

\*  \*  \*  \*  \*  \*

The bids shall be publicly opened at the time and place specified and the contract shall be awarded within 30 days thereafter by the agency or a representative delegated by the agency, in accordance with regulations prescribed by the agency, to the lowest responsible vendor unless, in the opinion of the agency or its delegated representative, the interest of the State or the contracting county shall be better served by the awarding of the contract to some other vendor, which may then be done, provided the agency shall set down in its minutes the reason

or reasons for granting the contract to the person other than the lowest responsible vendor, and clearly describing how the interest of the State or the contracting county shall be better served by awarding the contract to other than the lowest vendor. If 2 or more responsible vendors shall bid an equal amount and such amount shall be the lowest bid, the agency or its delegated representative may award the contract to any 1 of them. The agency or its delegated representative may reject all bids.

(6) "Public building" means any edifice, structure or building which is, or is to be, constructed, reconstructed, altered or repaired pursuant to a "public works contract" . . . .

It is apparent then that a "public building" contract is a specific type of "public works" contract. However, only a public building contract is subject to the provisions of 29 *Del.C.* § 6911.

When a state agency proposes to enter a public building contract which exceeds $10,000.00, § 6904(b)(2) provides.[3]

(2) In the case of any public works contract for the construction, reconstruction, alteration or repair of any public building (not a road, street or highway) of the State, of any county in the State, of any public school district or of any political subdivision of the State, there shall be a meeting of all prospective bidders and of the agency called by the agency upon reasonable notice and at a place and time stated in such notice which meeting shall be at least 15 days before the date for the submission of bids; at the meeting all the participants, including the agency, shall attempt to agree upon a listing of all subcontractor categories to be included in the bids for performing the work as required by § 6911 of this title, and any such agreed listing shall be final and binding upon all bidders and upon the agency. If all of the participants do not agree on such a listing at the meeting, then the agency itself, at least 10 days before the due date for the submission of bids, shall determine the subcontractor categories to be included in the listing. The listing, whether agreed to by all of the participants at the meeting or determined by the agency itself in the absence of the unanimous agreement of the participants

at the meeting, shall be published by the agency at least 10 days before the due date for the submission of bids by mailing and listing to all of the participants at the meeting. The listing as so published shall be final and binding upon all bidders and the agency and it shall be filled out completely in full without any abbreviations.

This section requires that the State agency hold a prebid meeting to determine what specialty work will be included in the special bid requirements of § 6911. At this meeting, the bidders and the State agency may unanimously agree to eliminate certain work specialties from the required subcontractor bid listing. In the event that they fail to agree, the state agency may unilaterally determine what listings are required and publish that determination. Both the meeting and the publication are to take place within a statutorily defined period.

The Vice Chancellor, in his summary denial of a preliminary restraining order, found that part of this project fell within the statutory definition of a "public building" and, therefore, the provisions of 29 *Del.C.* § 6911 applied to the bid. He further found that the mandatory nature of that statute was not modified by the agency's failure to timely hold a prebid meeting. He noted that the contractor was experienced in the field of public contracts and that it was on actual notice, through the bid specifications, that the subcontractor listing was required. Finally, the Vice Chancellor found that the agency's violation in regard to the prebid meeting did not vitiate the bidding process since there was no change in the specialty work categories to be listed as a result of the meeting.

The policy underlying Chapter 69 was recently discussed in the unreported opinion in the case of *C & D Contractors, Inc. v.*

3. There is an apparent conflict regarding the amount over which sealed bidding is required. 29 *Del.C.* § 6903(e) places the floor at $20,000.00 whereas 29 *Del.C.* § 6904(b)(1) places the floor at $10,000.00. We note that § 6904(b) was twice revised in a very short period in 1980 and that the $20,000.00 figure was also found in the earlier revision. However, the amount is not pertinent to this litigation, other than to indicate a *de minimis* amount, and, since § 6904(b) deals specifically with public works contracts, we will accept the $10,000.00 figure here.

*Division of Mental Health,* Del.Ch., C.A. No. 6612 (Brown, V.Ch., December 8, 1981). In that case, a low bidder indicated it would perform certain specialty work. Another contractor protested the award of a bid since the low bidder lacked the necessary specialty license at the time the bids were opened.

The Court noted that the statute in question, 29 *Del.C.* § 6911, had been amended effective July 1, 1980, and the requirement that the contractor or subcontractor listed as doing specialty work hold a specialty license at the time the bids are opened had been removed. However, the Vice Chancellor found that the policy underlying the amended statute remained unchanged, and that the requirement that specialty work subcontractors must be specified was intended to remedy the evil of bid shopping.[4]

The Court interpreted § 6911 to mean that if a specialty category was listed after the prebid meeting, a bidder who did not specify a subcontractor for that specialty had to be qualified itself as a subcontractor under § 6911 in order for its low bid to be accepted. Although the Court found that the provisions permitting exemptions of some or all specialty work from the listing provision worked at odds to the policy against bid shopping, it went on to observe that they had a rational basis:

> [T]he General Assembly has decided that in situations where certain specialty work is *de minimis* as compared to the overall project, a means should be established whereby it can be removed from the realm constituting a bid condition under § 6911 so as to avoid a situation ... where the State, and thus the taxpayer, are deprived of the benefit of an otherwise advantageous low bid because of a technical defect or oversight in a bid pro-

posal as to specialty work which forms only a fractional part of the entire contract.

■ Thus, we find that the legislature has expressly provided two means whereby the strictures of subcontractor listing may be avoided: first, if the contract is not in excess of $10,000.00 the requirement does not apply, *see* § 6904(b)(1); second, the bidders and/or the State may agree to exempt specified work specialties from the listing requirement, *see* § 6904(b)(2).

George & Lynch makes two arguments against the application of the listing restriction of § 6911 to the public improvement at issue. First, it contends that this improvement is not a "public building" within the terms of the statute. Second, it contends that the Department's failure to follow the statutory procedure as to the prebid meeting, in effect, modified the application of the subcontractor listing requirement.

■ We find little merit in the argument that this is not a contract for a public building. This contract was for the construction of a sewage treatment plant. As that term implies, the work primarily related to sewer lines and attendant apparatus. However, there are two small buildings on the plans which require the installation of electrical equipment. Public buildings are defined in 29 *Del.C.* § 6901(6). A public building is "any edifice, structure or building". This inclusive definition is similar to that found in *Black's Law Dictionary* at 244 (rev. 45th ed. 1968). It is quite obvious that this project involves construction which will house machinery, equipment, and an office. George & Lynch also contends that the term "public building" refers only to large buildings and that the structures projected in this improvement are relatively small in size. This argument is also without merit.

---

4. In bid shopping, a bidder is said to be in a position to increase his profit, often to the detriment of the project itself, by forcing subcontractors to provide services at destructively low prices in order to obtain work. The Vice Chancellor remarked in the case of *Kuhn Construction Co. v. State,* Del.Ch., 366 A.2d 1209, 1214 (1976):

> "To allow a general contractor ... to be awarded a contract and to thereafter hire individual craftsmen with the required licenses as needed to perform specialty work would emasculate the purpose of the statute and again give rise to an unhealthy relationship between contractors and subcontractors which the statute was designed to prevent."

There is no other word than "buildings" to use in reference to the construction at issue here.

Additionally, George & Lynch argues that since these buildings represent only a small proportion of the cost of the project, (estimated at $100,000.00, compared to the cost of the entire project, $1,500,000.00), the entire project should not be categorized as subject to § 6911. Although the latter argument has possible appeal in cases where the buildings may be deemed a *de minimis* part of the public improvement, we find ourselves unable to formulate a practical rule exempting some buildings and failing to exempt others. A rule involving a proportion or percentage of a total project could result in the exemption of major buildings if they were part of a still larger project. A court-made rule involving the exemption of buildings costing less than an arbitrary dollar amount would appear to be in derogation of 29 *Del.C.* § 6904(b)(1), which requires that subcontractors be named if the project involves more than $10,000.00. The General Assembly has already made a statutory distinction relative to "public buildings" by providing that only buildings which cost less than $10,000.00 are exempt.

■ Although the General Assembly did not expressly address the problem posed by George & Lynch regarding categorization of the whole by the part, in the definition section, § 6901(6), it did apply the term "public building" broadly, to *"any"* structure or edifice. The General Assembly did address the specific problem of bid shopping in § 6911 in relation to public buildings and mandated the performance of certain requisites in order to eradicate that evil. Each section of Chapter 69 must be construed in connection with every other section so as to produce a consistent and harmonious whole. *See* 2A Sutherland, *Statutes and Statutory Construction* at 56 (4th ed. 1973). Therefore, this Court cannot interpret the gener-

al term "public building" in such a manner as to nullify the plain intent of § 6911, and encourage bid shopping after the award of a construction contract which includes a public building.

■ Thus, we find that the Vice Chancellor's decision to apply § 6911 to this unitary contract is the result of the only practical interpretation of § 6901(6), and we accept his conclusion as the product of an orderly and logical deductive process. *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972).

■ George & Lynch's second contention, that the Department's failure to hold a § 6904 prebid meeting and to republish the specialty work list eliminated the need to comply with the provisions of § 6911(1), also must be resolved against its proponent. Initially, we note that strict compliance with § 6911(1) and award of the contract to the second low bidder, for which the Department argues, will obviously increase the cost of this public improvement and is in apparent contradiction with one of the primary purposes of these bidding statutes, the protection of public funds. *Delaware Technical and Community College v. C & D Contractors, Inc.,* Del.Supr., 338 A.2d 568, 569 (1975). However, saving money is not the exclusive purpose of these statutes, *W. Paynter Sharp & Sons, Inc. v. Heller,* Del. Ch., 280 A.2d 748, 751 (1971), and an additional legislative purpose is found in § 6911, the prevention of bid shopping and the evils which are said to arise from such a practice. Thus, in our analysis of the problem before us, we must consider both of these public policies and the interaction of the various provisions of the bidding statute.

The mandatory nature of the requirements corresponding to those now found in § 6911(1) was recognized in the case of *Haddock v. Board of Public Education in Wilmington,* Del.Ch., 84 A.2d 157 (1951). In that case a predecessor statute to § 6911 was examined.[5] The requirement that bidders list subcontractors in public building

---

**5.** *See* 38 Del.Laws, c. 171 (1933), "An Act Requiring Contractors on all Public Building

Projects to Name Their Sub-Contractors".

bids was held to be mandatory. The low bidder in the *Haddock* case failed to list all its subcontractors in its bid, but it argued that its failure was only a technical, not a substantial violation.[6]

The Vice Chancellor disagreed, finding that, "[T]he statute makes the provision relative to the naming of sub-contractors a condition precedent to the award of the bid. Such a statute is mandatory and never merely directory." *Id.* at 162. The Court found that in the absence of compliance with the subcontractor listing requirements, the Board of Education was without authority to award the contract to the low bidder. *Ibid* at 164. A similar conclusion was drawn in *C & T Associates, Inc. v. Government of New Castle County*, Del.Ch., 408 A.2d 27 (1979), where the Court held, "It is clear that the statute makes the naming of subcontractors a condition precedent to the awarding of the bid. Such a statute is mandatory and never merely directory .... This means that the contract should never be awarded on the strength of a promise that the statutory conditions restricting the very right to accept a bid will be satisfied subsequent to its acceptance." *Id.* at 28.

In *Bader v. Sharp*, Del.Ch., 110 A.2d 300 (1954), *aff'd* Del.Supr. 125 A.2d 499 (1955), the Court differentiated between mandatory and non-mandatory bid requirements. The State agency had required that each bidder include certification of materials suppliers in its bid. The agency decided to waive this non-statutory requirement in order to accept the low bid. The Vice Chancellor determined that the agency could waive that requirement because the certification condition was not mandatory. He conditioned such a waiver on a finding that the bid was otherwise responsive and that the competitive nature of the bidding had not been destroyed. However, in discussing the effect of mandatory conditions, the Vice Chancellor determined that although the primary purpose of the bidding statutes was to protect against waste of public funds, that purpose must give way before specific statutory requirements. *Id.* at 303. On appeal, this Court affirmed, finding that supplier certification was intended to assure the Department of the responsibility of the general contractor and was not analogous to the statutory subcontractor list. *See* 125 A.2d at 503.

Although there would be an economic advantage to the State if it were found that the agency has the power to accept George & Lynch's low bid, the problems inherent in awarding public contracts have led the General Assembly to find that the public good is best served through the application of the restraints on bidding (such as those expressed in § 6911) when public buildings are at issue. Even though it is ironic indeed that the bidding laws of this State, which are designed to protect taxpayers from a waste of public funds, actually achieve the opposite result here, this Court cannot rewrite this legislative mandate by requiring a State agency to waive statutory restraints.[7]

■ The Department's inadequate performance in respect to the prebid meeting required by § 6904(b)(2) does not constitute a waiver of bid requirements imposed by statute on the bidders. A meeting under § 6904 merely provides an elective means to modify the requirements of § 6911. In the case before us, the meeting (which was admittedly late) effected no modification in the list of specialty subcontractors and George & Lynch chose not to send a representative. None of the bidders was adversely affected by the Department's failure to restate the requirement initially established by statute and clearly stated in the original bid documents—that certain

---

6. The defendants made two other arguments relevant to the particular provisions of the statute. A third argument related to plaintiff's taxpayer standing.

7. See the unreported opinion in *Vepco, Inc. v. Division of Facilities Management,* Del.Ch., C.A. No. 757 (Hartnett, V.C., July 20, 1982) which deals with the purpose of a prebid meeting.

specialty subcontractors must be listed by name. Every bidder was in an identical position and the competitive nature of the bidding was maintained. If the bid were to be awarded to George & Lynch despite its failure to specify an electrical subcontractor, this competitive balance would be disturbed, and the announced rules of the bidding would be ignored.

We do agree, however, that the agency's failure to hold a timely prebid meeting in this case was inappropriate, especially in view of its duty to demand that bidders be bound by a strict application of the rules contained in § 6911(1). Although George & Lynch did not list an electrical subcontractor as it was required to do, the Department also failed to hold a prebid meeting in accord with § 6904(b)(2). The meeting was held eight, not fifteen, days before bid day and a post-meeting list was not published. The statutory time frame is unequivocal, and, in another factual setting, we might have been persuaded that a disregard of such statutory requirements had serious effects on the entire bidding procedure. However, in this case, it is clear that George & Lynch did not rely on the agency's conduct in any way in submitting its faulty bid. George & Lynch did not believe that the Department's failure to comply with § 6904 had any effect on the subcontractor listing, and it termed the omission of an electrical subcontractor's name from its bid "an error" which it did not remedy because of "uncertainty ... as to which subcontractor would be retained to perform the work though [its agent] knew George & Lynch would not do the work." It is also to be noted that George & Lynch failed to avail itself of the opportunity to request deletion of the electrical subcontract from the specialty work list at the March 2, 1983 prebid meeting.

We find no ambiguity in the language of Title 29 of the Delaware Code, Chapter 69, and must decide this case in accord with its plain meaning even though the effect of that decision is unfortunate. This harsh result is obviously contrary to the intent and spirit of our bidding laws, and it cannot be justified on any basis other than the fact that our statutory scheme compels such an aberration. An error of the type which occurred here, a result of negligence or mistake but not of bad faith, should not mandate the result that now must obtain. If proper administrative authority is reposed in the State's contracting officer, an error of this minimal significance, representing approximately 6% of the total bid, could be waived unless committed in bad faith. Such a qualification would be entirely consistent with the purpose of subcontractor listing. But 29 *Del.C.* § 6911, as presently worded, permits. no such waiver. Because the statute is clear on this point, there is no apparent basis for construction, *see Knox v. Georgia-Pacific Plywood Co.,* Del.Supr., 130 A.2d 347, 352 (1957), and we cannot read a good faith exception into the law.

This problem should be brought to the attention of the General Assembly. It has already created an "escape hatch", analogous to a good faith clause, when the State interest is better served by an award to other than the low bidder. *See* 29 *Del.C.* § 6907 (set forth in footnote 2, supra). However, the language of that section does not appear to be broad enough to justify an award to a non-conforming low bidder, the situation which is involved here.

■ We hold that the State agency properly rejected the low bid of George & Lynch because that bid failed to list all of its specified subcontractors, as required by the bid papers and by 29 *Del.C.* § 6911(1). Under the circumstances, the Court of Chancery was correct when it refused to enjoin the granting of the contract to the lowest bidder which complied with statutory requirements.

\*      \*      \*

The decision of the Court of Chancery was AFFIRMED June 6, 1983 by announcement of this Court.