62 P.3d 631

OKADA TRUCKING CO., LTD., Petitioner–Appellee/Petitioner–Respondent,

v.

BOARD OF WATER SUPPLY, CITY AND COUNTY OF HONOLULU, Respondent–Appellee/Respondent–Respondent,

and

Inter Island Environmental Services, Inc., Intervenor–Respondent–Appellant/Respondent–Petitioner.

No. 22956.

Intermediate Court of Appeals of Hawai'i.

Dec. 30, 2002.

As Amended March 4, 2003.

Darryl H.W. Johnston, David F.E. Banks, and Marc E. Rousseau (Cades Schutte Fleming & Wright), Honolulu, for intervenor-respondent-appellant/respondent-petitioner.

Dennis E.W. O'Connor and Kelvin H. Kaneshiro (Reinwald, O'Connor & Playdon, LLP), Honolulu, for petitioner-appellee/petitioner-respondent.

BURNS, C.J., WATANABE, and FOLEY, JJ.

Opinion of the Court by WATANABE, J.

This case is before us on remand from the Hawai'i Supreme Court with instructions that we "consider on the merits the points of error" raised by Intervenor –Respondent–Appellant/Respondent–Petitioner Inter Island Environmental Services, Inc. (Inter Island) in its application for judicial review of a decision entered on November 10, 1999 by a Department of Commerce and Consumer Affairs, State of Hawai'i hearings officer, terminating an award by Respondent–Appellee/Respondent–Respondent Board of Water Supply, City and County of Honolulu (BWS)

to Inter Island of a contract to construct a booster station in Kaluanui, Oʻahu (the Project).

The lengthy background of this case is laid out in *Okada Trucking Co. v. [BWS]*, 97 Hawaiʻi 544, 40 P.3d 946 (App.2001) (*Okada I*), and *Okada Trucking Co. v. [BWS]*, 97 Hawaiʻi 450, 40 P.3d 73 (2002) (*Okada II*), so we will not repeat it here, except to note that there is no dispute that: (1) Inter Island, in submitting the lowest bid ($1,349,160.00) for the Project, failed to list a plumbing subcontractor, as required by Hawaii Revised Statutes (HRS) § 103D–302(b) (Supp.1999) [1]; (2) the value of the work to be performed by Inter Island's plumbing subcontractor, who was retained after bid opening, was $8,300.00, $5,191.60 less than one percent of the total amount bid by Inter Island for the Project; and (3) BWS, applying the one percent exception set forth in HRS § 103D–302(b), determined that it was in the public's best interest to waive Inter Island's failure to list the plumbing subcontractor and accept Inter Island's lowest bid for the Project.

Inter Island claims that the hearings officer erred in terminating BWS's contract award on grounds that: (1) Inter Island was not a "[r]esponsible bidder," as defined by HRS § 103D–104 (1993) and Hawaii Administrative Rules (HAR) § 3–120–2,[2] because it did not have, at the time of bid opening, a properly licensed plumbing subcontractor "lined up" and contractually bound to perform the portions of the contract that required a licensed plumbing subcontractor; (2) Inter Island's bid was "nonresponsive" under HRS § 103D–104 (1993) [3] because, at the time of its submission, (a) the bid failed to list the name of an appropriate licensed plumbing subcontractor who would be doing the required plumbing subcontract work for the Project, and (b) Inter Island did not have a subcontractor lined up and contractually bound to perform the required plumbing work for the Project; and (3) BWS violated the Hawaiʻi Public Procurement Code, HRS chapter 103D (the Procurement Code), by waiving the subcontractor listing requirement pursuant to HRS § 103D–302(b) and HAR § 3–122–21(a)(8).[4]

We agree with Inter Island's first and third contentions but disagree with Inter Island's second contention.

## DISCUSSION

### A. *Standard of Review*

The legal issue we must decide in this case involves the proper interpretation of HRS § 103D–302, which provides, in relevant part, as follows:

1. Hawaii Revised Statutes (HRS) § 103D–302 (Supp.1999), which is part of the Hawaii Public Procurement Code (the Procurement Code), discusses "competitive sealed bidding." Subsection (b) provides:

 An invitation for bids shall be issued, and shall include a purchase description and all contractual terms and conditions applicable to the procurement. If the invitation for bids is for construction, it shall specify that all bids include the name of each person or firm to be engaged by the bidder as a joint contractor or subcontractor in the performance of the contract and the nature and scope of the work to be performed by each. Construction bids that do not comply with this requirement may be accepted if acceptance is in the best interest of the State and the value of the work to be performed by the joint contractor or subcontractor is equal to or less than one per cent of the total bid amount.

2. HRS § 103D–104 (1993), the definition section of the Procurement Code, and Hawaii Administrative Rules (HAR) § 3–120–2 both define a "[r]esponsible bidder" as "a person who has the capability in all respects to perform fully the

contract requirements, and the integrity and reliability which will assure good faith performance."

3. HRS § 103D–104 (1993) defines a "[r]esponsive bidder" as "a person who has submitted a bid which conforms in all material respects to the invitation for bids."

4. HAR § 3–122–21(a)(8) provides:

 For construction projects the bidder shall provide:
 (A) The name of each person or firm to be engaged by the bidder as a joint contractor or subcontractor in the performance of the contract; and
 (B) The nature and scope of the work to be performed by each.
 Construction bids that do not comply with the above requirements may be accepted if acceptance is in the best interest of the State and the value of the work to be performed by the joint contractor or subcontractor is equal to or less than one percent of the total bid amount.

**Competitive sealed bidding.** (a) Contracts shall be awarded by competitive sealed bidding except as otherwise provided in section 103D–301. Awards of contracts by competitive sealed bidding may be made after single or multi-step bidding. Competitive sealed bidding does not include negotiations with bidders after the receipt and opening of bids. Award is based on the criteria set forth in the invitation for bids.

(b) An invitation for bids shall be issued, and shall include a purchase description and all contractual terms and conditions applicable to the procurement. *If the invitation for bids is for construction, it shall specify that all bids include the name of each person or firm to be engaged by the bidder as a joint contractor or subcontractor in the performance of the contract and the nature and scope of the work to be performed by each. Construction bids that do not comply with this requirement may be accepted if acceptance is in the best interest of the State and the value of the work to be performed by the joint contractor or subcontractor is equal to or less than one per cent of the total bid amount.*

. . . .

(d) Bids shall be opened publicly in the presence of one or more witnesses, at the time and place designated in the invitation for bids. The amount of each bid and other relevant information specified by rule, together with the name of each bidder shall be recorded. The record and each bid shall be open to public inspection.

(e) *Bids shall be unconditionally accepted without alteration or correction, except as authorized in this chapter or by rules adopted by the policy board.*

(f) Bids shall be evaluated based on the requirements set forth in the invitation for bids. These requirements may include criteria to determine acceptability such as inspection, testing, quality, workmanship, delivery, and suitability for a particular purpose. Those criteria that will affect the bid price and be considered in evaluation for award shall be objectively measurable, such as discounts, transportation costs, and total or life cycle costs. The invitation for bids shall set forth the evaluation criteria to be used. No criteria may be used in bid evaluation that are not set forth in the invitation for bids.

(g) *Correction or withdrawal of inadvertently erroneous bids before or after award, or cancellation of invitations for bids, awards, or contracts based on such bid mistakes, shall be permitted in accordance with rules adopted by the policy board. After bid opening no changes in bid prices or other provisions of bids prejudicial to the interest of the public or to fair competition shall be permitted. Except as otherwise provided by rule, all decisions to permit the correction or withdrawal of bids, or to cancel awards or contracts based on bid mistakes, shall be supported by a written determination made by the chief procurement officer or head of a purchasing agency.*

(h) *The contract shall be awarded with reasonable promptness by written notice to the lowest responsible and responsive bidder whose bid meets the requirements and criteria set forth in the invitation for bids.* In the event all bids exceed available funds as certified by the appropriate fiscal officer, the head of the purchasing agency responsible for the procurement in question is authorized in situations where time or economic considerations preclude resolicitation of work of a reduced scope to negotiate an adjustment of the bid price, including changes in the bid requirements, with the low responsible and responsive bidder, in order to bring the bid within the amount of available funds.

(Emphases added.)

 The interpretation of a statute is a question of law that we review *de novo*. *Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997). In this regard, the Hawai'i Supreme Court has stated that

[w]hen construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the con-

text of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) (1993). Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Id.* at 148, 931 P.2d at 590 (quoting *State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (internal brackets, ellipsis, and footnote omitted). An appellate court may also consider

the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning. HRS § 1–15(2) (1993). Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.

*Korean Buddhist Dae Won Sa Temple of Hawai'i v. Sullivan,* 87 Hawai'i 217, 230, 953 P.2d 1315, 1328 (1998) (quoting *State v. Cullen,* 86 Hawai'i 1, 8–9, 946 P.2d 955, 963–64 (1997)) (internal brackets, ellipsis, and quotation marks omitted).

B. *Whether Inter Island Was a Responsible Bidder*

■ HRS § 103D–302(h) provides that a contract let under the competitive sealed bid process "shall be awarded with reasonable promptness by written notice to the lowest responsible and responsive bidder whose bid meets the requirements and criteria set forth in the invitation for bids." HRS § 103D–104 (Supp.2001) defines "[r]esponsible bidder" as "a person who has the capability in all respects to perform fully the contract requirements, and the integrity and reliability which

will assure good faith performance." HRS § 103D–310 (Supp.2001) states, in relevant part:

**Responsibility of offerors.** (a) Unless the [procurement] policy board, by rules, specifies otherwise, before submitting an offer, a prospective offeror, not less than ten calendar days prior to the day designated for opening offers, shall give written notice of the intention to submit an offer to the procurement officer responsible for that particular procurement.

(b) *Whether or not an intention to bid is required, the procurement officer shall determine whether the prospective offeror has the financial ability, resources, skills, capability, and business integrity necessary to perform the work.* For this purpose, the officer, in the officer's discretion, may require any prospective offeror to submit answers, under oath, to questions contained in a standard form of questionnaire to be prepared by the policy board. Whenever it appears from answers to the questionnaire or otherwise, that the prospective offeror is not fully qualified and able to perform the intended work, a written determination of nonresponsibility of an offeror shall be made by the head of the purchasing agency, in accordance with rules adopted by the policy board. The unreasonable failure of an offeror to promptly supply information in connection with an inquiry with respect to responsibility may be grounds for a determination of nonresponsibility with respect to such offeror. The decision of the head of the purchasing agency shall be final unless the offeror applies for administrative review pursuant to section 103D–709.

(Emphasis added.)

HAR chapter 3–122, subchapter 13, entitled "Responsibility of Bidders and Offerors[,]" includes several rules that elaborate on a procurement officer's duties in determining the responsibility of bidders for construction contracts. At the time bids were solicited and opened for the Project, HAR § 3–122–108,[5] entitled "Qualification of bidders and offerors[,]" required prospective

---

5. At the time bids were solicited and opened by Respondent–Appellee/Respondent–Respondent

. Board of Water Supply, City and County of Honolulu (BWS) for the construction of the booster

bidders to submit a notice of intention to bid no later than ten days prior to bid opening so that a procurement officer could determine the prospective bidder's "ability to perform the work intended." HAR § 3–122–108 also provided that a procurement officer may require a prospective bidder to fill out a confidential questionnaire for the purpose of determining a prospective bidder's responsibility. HAR § 3–122–109 [6] set forth the contents of the questionnaire.

Additionally, at the time of bid opening, HAR § 3–122–110,[7] provided, in relevant part, as follows:

> station in Kaluanui, O'ahu (the Project), HAR § 3–122–108 (1999) provided, in relevant part, as follows:
>
> *Qualification of bidders and offerors.* (a) Prospective bidders or offerors shall be capable of performing the work for which offers are being called. Each prospective bidder or offeror shall file a written or facsimile notice of intention to submit an offer pursuant to section 3–122–9, subject to the following:
>
> > (1) The notice of intention to submit an offer shall be received not less than ten days prior to the date designated for opening.
> >
> > (2) A notice of intention to submit an offer shall be filed for the construction of any public building or public work when the offer submitted for the project by a contractor is or will be $25,000 or more.
> > ....
>
> (b) Upon notification of the bidder's intent to submit an offer, the procurement officer shall determine whether the prospective offeror has the ability to perform the work intended. For this purpose, the procurement officer may require any prospective offeror to submit answers to questions contained in the sample questionnaire provided by the [procurement] policy board.
>
> > (1) All information contained in answers to the questionnaire shall be and remain confidential. Questionnaires so submitted shall be returned to the bidders after having served their purpose.
> >
> > (2) Any government officer or employee who knowingly divulges or permits to be divulged any information to any person not lawfully entitled thereto shall be fined not more than $250.00.
>
> HAR § 3–122–108 was subsequently amended in 2002 to delete the requirement for a notice of intent to offer and currently reads as follows:
> *Qualification of offeror or prospective offeror.* (a) Pursuant to section 103D–310, HRS, a determination of responsibility or nonresponsibility of an offeror or prospective offeror to perform the work called for. in the solicitation shall be made by the procurement officer on the basis of available information.

*Determination of nonresponsibility.* (a) The procurement officer shall determine, on the basis of available information, the responsibility or nonresponsibility of a prospective offeror.

(b) If the procurement officer requires additional information, the prospective offeror shall promptly supply the information. *Failure to supply the requested information at least forty-eight hours prior to the time advertised for the opening shall be considered unreasonable and may be grounds for a determination of nonresponsibility.*

> (b) If the procurement officer requires additional information, the offeror or prospective offeror may be required to answer questions contained in the sample questionnaire provided by the policy board.
>
> (c) The requested information shall be furnished upon request within two working days or longer at the discretion of the procurement officer. Failure to furnish the requested information within the time allowed may be grounds for a determination of nonresponsibility.
>
> (d) Upon determination of nonresponsibility, the offeror or prospective offeror shall be notified in writing. The decision shall be final unless the offeror or prospective offeror applies for administrative hearing pursuant to section 3–126–42.
>
> At the same time, a new HAR § 3–122–111 was promulgated, to make the notice of intent to bid optional. Department of Accounting and General Services, Summary of Amendments to HAR chapter 3–122 (July 25, 2002).

6. HAR § 3–122–109(a) provided:

> *Questionnaire.* (a) The questionnaire shall request information for the following categories:
>
> > (1) Financial ability to deliver the goods or perform the work required;
> >
> > (2) Material, equipment, facility, and personnel resources and expertise available, or the ability to obtain them, in order to meet contractual requirements;
> >
> > (3) References for the determination of a satisfactory record of performance;
> >
> > (4) References for the determination of a satisfactory record of integrity;
> >
> > (5) Legal qualifications to contract with the State; and
> >
> > (6) Additional information necessary for a determination of responsibility.

7. Effective July 25, 2002, HAR § 3–122–110 was "[r]epealed because language was placed in § 3–122–108." Department of Accounting and General Services, Summary of Amendments to HAR chapter 3–122 (July 25, 2002).

(c) *Notwithstanding the provision of paragraph (b), the head of the purchasing agency shall not be precluded from requesting additional information.*

(Emphases added). Under the foregoing rules, determinations of a bidder's responsibility were generally made prior to bid opening, although a procurement agency was not precluded from requesting additional information to determine a bidder's responsibility after the bid opening date.

■ The sole basis for the hearings officer's determination that Inter Island was not a "[r]esponsible bidder" was that Inter Island had failed to "line up" and have its plumbing subcontractor contractually bound to perform the plumbing portions of the Project on the date of bid opening. The true test of responsibility, however, is whether a bidder will be able to *perform the contract,* not whether it will be able to start construction the day the bid is awarded. *See Federal Elec. Corp. v. Fasi,* 56 Haw. 57, 66, 527 P.2d 1284, 1291 (1974) ("A responsible bidder ... is 'one who is not only financially responsible, but who is possessed of the judgment, skill, ability, capacity and integrity requisite and necessary to *perform the contract* according to its terms.'" (Emphasis added.)) As we pointed out in *Okada I,*

> [r]esponsibility addresses the issue of the performance capability of a bidder, which can include inquiries into financial resources, experience, management, past performance, place of performance, and integrity. In contrast to responsiveness, *a bidder may present evidence of responsibility after bid opening up until the time of award.*

*Okada I,* 97 Hawai'i at 556, 40 P.3d at 958 (emphasis added, quoting *Bean Dredging Corp. v. United States,* 22 Cl.Ct. 519, 522–23 (1991)). *See also James Luterbach Constr. Co. v. Adamkus,* 781 F.2d 599, 601 (7th Cir. 1986) ("A bidder is responsible if it can perform the contract as promised. Whereas bidder responsibility is determined on the basis of information available before or after

submission of the bid, bid responsiveness is determined only by facts available prior to or at the opening of the bid."); *Ocean Elec. Corp. v. Laird,* 473 F.2d 154, 155–56 (D.C.Cir.1972) (holding that a requirement in an invitation for bids that "only bids received from contractors having active facilities security clearance of confidential or higher will be considered" was "not a condition precedent to submission of a bid, and proof or evidence of such qualification could be furnished at any time prior to performance of work under the contract.").

In this case, nothing in the record indicates that Inter Island lacked the financial ability, resources, skills, capability, judgment, ability, capacity, and integrity requisite and necessary to perform the contract according to its terms. Inter Island was licensed as both an "A" general engineering contractor and a "B" general building contractor; it also held a number of "C" specialty contractor licenses. When Inter Island was informed that a licensed plumbing subcontractor was necessary to perform a portion of the work for the Project,[8] Inter Island immediately engaged a licensed plumbing subcontractor for the Project. Moreover, although a process based on the statutes and rules quoted above was in place to determine whether Inter Island was responsible prior to bid opening, BWS took no action to declare that Inter Island was not a responsible bidder.

The record amply indicates that Inter Island had the capability "in all respects to perform fully the contract requirements, and the integrity and reliability which will assure good faith performance" and was therefore, a "[r]esponsible bidder" within the meaning of HRS §§ 103D–302(h) and 103D–104.

### C. *Whether Inter Island's Bid Was Non-responsive*

#### 1.

HRS § 103D–104 (1993) defines a "[r]esponsive bidder" as "a person who has sub-

---

**8.** As we noted in *Okada Trucking Co. v. [BWS],* 97 Hawai'i 544, 548, 40 P.3d 946, 950 (App.2001), the bid documents issued by BWS did not specifically require the listing of a plumbing subcontractor and only three of the nine bidders for the Project listed a subcontractor with a plumbing subcontractor license. Even Petitioner–Appellee/Petitioner–Respondent Okada Trucking Co., Ltd. did not list a plumbing subcontractor in its bid.

mitted a bid which conforms in all material respects to the invitation for bids." Additionally, HRS § 103D–302(b) (Supp.2001) requires that

> [a]n invitation for bids shall be issued, and shall include a purchase description and all contractual terms and conditions applicable to the procurement. *If the invitation for bids is for construction, it shall specify that all bids include the name of each person or firm to be engaged by the bidder as a joint contractor or subcontractor in the performance of the contract and the nature and scope of the work to be performed by each.* Construction bids that do not comply with this requirement may be accepted if acceptance is in the best interest of the State and the value of the work to be performed by the joint contractor or subcontractor is equal to or less than one per cent of the total bid amount.

(Emphasis added.)

The Hawai'i Supreme Court has explained that

> [t]he requirement that a bid be responsive is designed to avoid unfairness to other contractors who submitted a sealed bid on the understanding that they must comply with all of the specifications and conditions in the invitation for bids, and who could have made a better proposal if they imposed conditions upon or variances from the contractual terms the government had specified. The rule also avoids placing the contracting officer in the difficult position of having to balance the more favorable offer of the deviating bidder against the disadvantages to the government from the qualifications and conditions the bidder has added. In short, the requirement of responsiveness is designed to avoid a method of awarding government contracts that would be similar to negotiating agreements but which would lack the safeguards present in either that system or in true competitive bidding.

*Southern Foods Group, L.P. v. Dep't of Education*, 89 Hawai'i 443, 456, 974 P.2d 1033, 1046 (1999) (*Southern Foods* ) (quoting *Toyo Menka Kaisha, Ltd. v. United States*, 220 Ct.Cl. 210, 597 F.2d 1371, 1377 (Cl.Ct.1979))

(internal brackets, citations, and quotation marks omitted).

 Unlike responsibility, the relevant time for a determination of a bid's responsiveness is the bid opening date. As the supreme court explained in *Southern Foods,*

> [r]esponsiveness is determined by reference to when [the bids] are opened and not by reference to subsequent changes in a bid. Allowing a bidder to modify a nonresponsive bid when, upon opening the bids, it appears that the variations will preclude an award, would permit the very kind of bid manipulation and negotiation that the rule is designed to prevent.

*Id.* at 457, 974 P.2d at 1047 (quoting *Toyo Menka Kaisha, Ltd.,* 597 F.2d at 1377) (citation and emphasis omitted). Similarly, the United States Claims Court has explained that "[m]atters of bid responsiveness must be discerned solely by reference to the materials submitted with the bid and facts available to the government at the time of bid opening." *Blount, Inc. v. United States,* 22 Cl.Ct. 221, 226.

### 2.

 The hearings officer determined that Inter Island's bid was nonresponsive on two grounds: (1) the bid failed to list the name of the subcontractor that Inter Island intended to use for the plumbing work for the Project; and (2) Inter Island did not have, at bid opening, a subcontractor lined up and contractually bound to perform the plumbing work for the Project.

Since the Hawai'i Supreme Court held in *Okada II* that Inter Island was required to use a licensed plumbing subcontractor for the Project and it is undisputed that Inter Island did not name in its bid a person or firm to be engaged by it as a plumbing subcontractor for the Project, Inter Island's bid was clearly nonresponsive on the first ground.

In ruling that Inter Island's bid was nonresponsive on the second ground, the hearings officer relied primarily on Section SP–1 of the Invitation for Bids (IFB), which stated as follows:

*RESPONSIBILITY AND QUALIFICATION OF BIDDERS:* Prospective bidders or offerors must be capable of performing the work for which the bids are being called. The procurement officer shall determine whether the prospective bidder has the ability to perform the work intended.

The foregoing language essentially restates the statutory definition of a "[r]esponsible bidder" and ignores the distinction between "responsibility" and "responsiveness" under the Procurement Code. We have already concluded that bidders are not required to have their subcontractors "lined up" and contractually bound at the time of bid opening in order to be considered "responsible" and see no reason to interpret similar language in the IFB otherwise.

D. *Whether BWS Was Authorized to Waive Inter Island's Failure to List a Plumbing Subcontractor*

■ HRS § 103D–302(b) expressly provides that "[c]onstruction bids that do not comply with [the subcontractor listing] requirement may be accepted if acceptance is in the best interest of the State and the value of the work to be performed by the ... subcontractor is equal to or less than one per cent of the total bid amount." BWS accepted Inter Island's bid after determining that the value of the work to be performed by the plumbing subcontractor named by Inter Island after bid opening was equal to or less than one percent of the total amount bid by Inter Island and that it was in BWS's best interest to accept the lowest bid.

In holding that BWS could not waive Inter Island's nonconformance with HRS § 103D–302(b), the hearings officer reasoned that

acceptance of [Inter Island's] bid and award of the Project contract to [Inter Island] was not in the best interest of [BWS] as it was contrary to the expressed purposes and principles of the Procurement Code and the implementing rules.

According to the hearings officer, HRS § 103D–302(b) was primarily concerned with halting "bid shopping" and, since Inter Island did not have a subcontractor listed or "lined up" at the time of bid opening, it

would be able to "bid shop" if BWS were allowed to waive the subcontractor listing requirement. The hearings officer further concluded that bid shopping was contrary to public policy, and, therefore, it was improper for BWS to waive the subcontractor listing requirement in those instances where the general contractor did not have its subcontractors lined up prior to bid opening.

For the following reasons, we disagree with the hearings officer's construction of the waiver statute.

1.

The plain language of HRS § 103D–302(b) provides that "[c]onstruction bids that do not comply with [the subcontractor listing] requirement may be accepted" if two conditions, which were undisputably present in this case, have been met.

2.

The legislative history of HRS § 103D–302(b) reflects a clear legislative intent to vest discretion in procurement officers to waive minor violations of the subcontractor listing requirement if the value of the work to be performed by the subcontractor is equal to or less than one percent of the total amount bid, "in addition to being deemed by the policy office to be in the best interest of the public[.]"

Prior to the enactment of HRS chapter 103D, HRS § 103–29 (1985), which imposed the original subcontractor listing requirement, stated in absolute terms that a failure to list a necessary subcontractor would render the bid nonresponsive, requiring the bid to be rejected:

**Bids to include certain information.** In addition to meeting other requirements of bidders for public works construction contracts each such bid *shall include the name of each person or firm to be engaged by the bidder as a joint contractor or subcontractor in the performance of the public works construction contract.* The bid shall also indicate the nature and scope of the work to be performed by such joint contractor or subcontractors. *All bids*

*which do not comply with this require-ment shall be rejected.*

(Emphases added.)

During the 1993 special session, the legislature enacted, as Act 8, the Hawaii Public Procurement Code, now codified in HRS chapter 103D. Act 8 repealed HRS § 103–29 and added a new statutory provision, HRS § 103D–302(b), that provided as follows:

> An invitation for bids shall be issued, and shall include a purchase description and all contractual terms and conditions applicable to the procurement. *If the invitation for bids is for construction, it shall specify that all bids include the name of each person or firm to be engaged by the bidder as a joint contractor or subcontractor in the performance of the contract and the nature and scope of the work to be performed by each. Construction bids which do not comply with this requirement may be accepted if the chief procurement officer or rules of the policy office conclude that acceptance is in the best interest of the public.*

(Emphasis added, brackets omitted.)

The foregoing provision, in contrast to the repealed HRS § 103–29, gave broad discretion to the chief procurement officer to accept bids which did not comply with the subcontractor listing requirement. The provision was thus consistent with one of the stated legislative purposes for passage of the bill that became Act 8:

> This bill lays the foundation and sets the standards for the way government purchases will be made, but *allows for flexibility and the use of common sense by purchasing officials to implement the law in a manner that will be economical and efficient and will benefit the people of this State.*

*See* Sen. Stand. Comm. Rep. No. S8–93, in 1993 Senate Journal, Sp. Sess., at 40 (emphasis added).

Such broad-based discretion on the part of the chief procurement officer was substantially limited in 1994 by Act 186, which amended HRS § 103D–302(b) to its current language, as follows:

> An invitation for bids shall be issued[,] and shall include a purchase description and all contractual terms and conditions applicable to the procurement. If the invitation for bids is for construction, it shall specify that all bids include the name of each person or firm to be engaged by the bidder as a joint contractor or subcontractor in the performance of the contract and the nature and scope of the work to be performed by each. Construction bids [which] *that* do not comply with *this* requirement may be accepted if the chief procurement officer or rules of the policy office conclude that acceptance is in the best interest of the public[.] *and the value of the work to be performed by the joint contractor or subcontractor is equal to or less than one per cent of the total bid amount.*

1994 Haw. Sess. L. Act 186, § 9 at 422 (bracketed material deleted and underscored language added). The legislative history of Act 186 explained that the purpose of the amendment was to

> [e]xempt[ ] a construction bid from the requirement that all joint contractors and subcontractors be named and their work described in the bid, if the value of the work to be performed by each of the joint contractors or subcontractors is equal to or less than one per cent of the total bid amount, in addition to being deemed by the policy office to be in the best interest of the public[.]

Sen. Stand. Comm. Rep. No. 2959, in 1994 Senate Journal, at 1177 (emphasis added).

By construing HRS § 103D–302(b) as precluding a procurement officer from waiving a subcontractor listing violation unless a contractor had the unlisted subcontractor lined up and contractually bound to perform the contract on bid opening date, the hearings officer essentially eliminated the flexibility afforded to the procurement officer by the statute. We will not construe a statute so that it is rendered meaningless.

### 3.

In concluding that it was not in BWS's best interest to accept Inter Island's bid, the hearings officer explained:

Although acceptance of [Inter Island's] low bid would maximize the purchasing value of public funds, such award to [Inter Island], conversely: (1) fails to ensure the fair and equitable treatment of all persons dealing with the procurement systems, (2) fails to promote the maintenance of a procurement system of quality and integrity, and (3) fails to increase the public confidence in the public procurement procedures being followed.

The hearings officer thus recognized that one of the purposes served by competitive bidding statutes is to obtain the best price for government purchases and services. Nevertheless, the hearings officer determined that the evils of bid shopping, which HRS § 103D–302(b) was aimed at preventing, outweighed the interest BWS had in obtaining the lowest price for the Project.

In *George & Lynch, Inc. v. Division of Parks & Recreation*, 465 A.2d 345 (Del.1983), the Delaware Department of Natural Re-

sources and Environmental Control rejected the lowest bid for a construction contract on grounds that it failed to list an electrical subcontractor, as required by 29 Delaware Code § 6911.[9] The lowest bidder thereupon filed suit to enjoin the department's award of the contract to the second lowest bidder.

The Delaware Code provided two exemptions [10] from the strictures of the subcontractor listing requirement, neither of which was applicable to the lowest bid. The lowest bidder nevertheless argued that its failure to strictly follow the statutory subcontractor listing requirement should be waived.

Rejecting this argument, the Delaware Supreme Court initially observed that two competing public policies are involved when a statutory subcontractor listing requirement is violated and a government agency awards the contract to the second lowest bidder:

> [S]trict compliance with [the subcontractor listing requirement] and award of the con-

**9.** 29 Delaware Code § 6911 stated:

> (1) Such [public works contract for the construction, alteration, or repair of any public building] shall be awarded only to a bidder whose bid is accompanied by a statement containing, for each subcontractor category set forth in the "listing" as provided in § 6904(b) of this title, the name and address (city or town and state only—street number and p.o. box addresses not required) of the subcontractor whose services he [or she] intends to use in performing the work or in performing the work and providing the material for such subcontractor category. No bidder for such a contract shall list himself [or herself] in any accompanying statement as the subcontractor of any part of the public building unless the bidder, in addition to being licensed as a contractor of the State, shall also be recognized in the industry not only as a prime contractor but also as a subcontractor or contractor in and for any such part or parts of such work so listed in such accompanying statement.
>
> (2) Neither the State nor county nor public school district nor any political subdivision of the State, nor any agency of any of them, shall accept any bid for such a contract or award any such contract to any bidder, as the prime contractor, if the bidder has listed himself [or herself] as the subcontractor for any subcontractor category set forth on the "listing" as provided in § 6904(b) of this title, unless it has been established to the satisfaction of the awarding agency that the bidder has customarily performed the specialty work of such subcontractor category by artisans regularly employed by the bidder in his [or her] organi-

zation, that the bidder is duly licensed by the State to engage in such specialty work, if the State requires such licenses, and that the bidder is recognized in the industry as a bona fide subcontractor or contractor in such specialty work and subcontractor category. Illustrative only (and not intended to be exhaustive) of typical subcontractor categories involving their own respective types of specialty work are plumbing, electrical wiring, heating, roofing, insulating, weather stripping, masonry, bricklaying and plastering. The decision of the awarding agency as to whether a bidder who lists himself [or herself] as the subcontractor for a subcontractor category set forth in the "listing" as provided in § 6904(b) of this title for such subcontractor category shall be final and binding upon all bidders, and no action of any nature shall lie against any awarding agency because of its decision in this regard.

*George & Lynch, Inc. v. Division of Parks & Recreation*, 465 A.2d 345, 347 (Del.1983).

**10.** Under the Delaware Code, the subcontractor listing requirement did not apply to a contract that did not exceed $10,000.00 in amount. Del. C. § 6904(b)(1). Additionally, the listing requirement did not apply if the contracting agency and all prospective bidders unanimously agreed, during a pre-bid meeting required to be held at least fifteen days before the bid-submission date, that certain subcontractor categories need not be included in the bids; if no such agreement was reached, the agency itself, at least ten days before the bid-submission date, could determine the subcontractor categories to be included in the listing. Del. C. § 6904(b)(2).

tract to the second low bidder ... will obviously increase the cost of this public improvement and is in apparent contradiction with one of the primary purposes of these bidding statutes, the protection of public funds. However, saving money is not the exclusive purpose of these statutes, and an additional legislative purpose is ... the prevention of bid shopping and the evils which are said to arise from such a practice.

465 A.2d at 350 (citations omitted). Ultimately, the supreme court held that the lowest bidder's violation of the mandatory subcontractor listing requirement could not be waived:

Although there would be an economic advantage to the State if it were found that the agency has the power to accept [the] low bid, the problems inherent in awarding public contracts have led the General Assembly to find that the public good is best served through the application of the restraints on bidding (such as those expressed in [the subcontractor listing requirement]) when public buildings are at issue. Even though it is ironic indeed that the bidding laws of this State, which are designed to protect taxpayers from a waste of public funds, actually achieve the opposite result here, this [c]ourt cannot rewrite this legislative mandate by requiring a State agency to waive statutory restraints.

. . . .

We find no ambiguity in the language of Title 29 of the Delaware Code, Chapter 69, and must decide this case in accord with its plain meaning even though the effect of that decision is unfortunate. This harsh result is obviously contrary to the intent and spirit of our bidding laws, and it cannot be justified on any basis other than the fact that our statutory scheme compels such an aberration. An error of the type which occurred here, a result of negligence or mistake but not of bad faith, should not mandate the result that now must obtain. If proper administrative authority is reposed in the State's contracting officer, an error of this minimal significance, representing approximately 6% of the total bid, could be waived unless committed in bad

faith. Such a qualification would be entirely consistent with the purpose of subcontractor listing. But 29 Del.C. § 6911, as presently worded, permits no such waiver. Because the statute is clear on this point, there is no apparent basis for construction, and we cannot read a good faith exception into the law.

465 A.2d at 351–52 (citation and footnote omitted).

In contrast to the Delaware statutes governing subcontractor listing, HRS § 103D–302(b) expressly authorizes a contracting agency to waive the mandatory subcontractor listing requirement where "acceptance is in the best interest of the State and the value of the work to be performed by the ... subcontractor is equal to or less than one per cent of the total bid amount." BWS exercised its authority to waive Inter Island's failure to list a plumbing subcontractor after determining that it was in the public's interest to do so. Since the prerequisites for BWS's exercise of such authority were undisputably present in this case, the hearings officer wrongly interpreted HRS § 103D–302(b) to preclude waiver of a bidder's failure to list a subcontractor who had not been "lined up" prior to bid opening.

### 4.

█ Petitioner–Appellee/Petitioner–Respondent Okada Trucking Co., Ltd. (Okada) argues that the authority vested in a procurement officer under HRS § 103D–302(b) to waive *de minimis* violations of the subcontractor listing requirement should only be applicable in those situations where: (1) the failure to list a nonsignificant subcontractor in the bid proposal was the result of an inadvertent or unintentional mistake on the part of the bidder to list an already lined-up subcontractor, *and* (2) it was in the " 'best interest' of the State to accept the non-complying bid proposal." We disagree.

HRS § 103D–302(g) already includes a specific provision that governs situations involving an "inadvertent mistake" in a bid submission:

Correction or withdrawal of inadvertently erroneous bids before or after award, or cancellation of invitations for bids, awards,

or contracts based on such bid mistakes, shall be permitted in accordance with rules adopted by the policy board. After bid opening no changes in bid prices or other provisions of bids prejudicial to the interest of the public or to fair competition shall be permitted. Except as otherwise provided by rule, all decisions to permit the correction or withdrawal of bids, or to cancel awards or contracts based on bid mistakes, shall be supported by a written determination made by the chief procurement officer or head of a purchasing agency.

█ It is a general principle of statutory construction that "courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." *Coon v. City and County of Honolulu,* 98 Hawai'i 233, 259, 47 P.3d 348, 374 (2002) (internal quotation marks omitted). If we were to adopt Okada's reading of HRS § 103D–302(b) as only allowing waiver of a contractor's inadvertent mistakes that amount to less than one percent of the total amount bid, we would essentially be construing HRS § 103D–302(b) as superfluous, in violation of the foregoing principles of statutory construction.

In our view, moreover, a construction of the *de minimis* waiver provision of HRS § 103D–302(b) that is in accord with the literal language and legislative history of the statute reflects the reasonable compromise that the legislature made between the State's interest in preventing bid shopping and the competing interest of reducing the cost to government if the lowest bid for a construction job cannot be accepted because of a failure by a general contractor to list a subcontractor whose work is valued at less than one percent of the entire contract.

## CONCLUSION

In light of the foregoing discussion, we conclude that the hearings officer: (1) erred in determining that Inter Island was not a responsible bidder, (2) correctly concluded that Inter Island's bid was not responsive, and (3) erred in holding that BWS could not accept Inter Island's bid as being in the "best interest of the State[.]"

Accordingly, we reverse the Hearings Officer's Findings of Fact, Conclusions of Law and Decision, entered on November 10, 1999.