**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-22-0000585**
**29-DEC-2023**
**08:47 AM**
**Dkt. 77 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---oOo---


ALPHA, INC., Petitioner-Appellant-Appellant, v.
BOARD OF WATER SUPPLY, CITY AND COUNTY OF
HONOLULU, Respondent-Appellee-Appellee, and
BEYLIK/ENERGETIC A JV, Intervenor-Appellee-Appellee,
and OFFICE OF ADMINISTRATIVE HEARINGS,
DEPARTMENT OF COMMERCE AND CONSUMER AFFAIRS,
STATE OF HAWAII, Appellee-Appellee,


NO. CAAP-22-0000585

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CCV-22-0000929)


DECEMBER 29, 2023

LEONARD, PRESIDING JUDGE, AND WADSWORTH AND NAKASONE, JJ.


OPINION OF THE COURT BY WADSWORTH, J.

In April 2022, Respondent-Appellee-Appellee Board of
Water Supply (**BWS**) invited bids for a project to install three
exploratory wells in central Oʻahu (**Project**).  After receiving a
bid from Petitioner-Appellant-Appellant Alpha, Inc. (**Alpha**), BWS
rejected the bid as "nonresponsive," *i.e.*, not conforming in all
material respects to the invitation for bids.  BWS awarded the
contract to Intervenor-Appellee-Appellee Beylik/Energetic A JV
(**Beylik**) and denied Alpha's protest.  Alpha submitted a request
for hearing (**Request**) to Appellee-Appellee Office of
Administrative Hearings (**OAH**), Department of Commerce and
Consumer Affairs (**DCCA**), seeking administrative review of BWS's

decision.  After briefing and a hearing, the OAH hearings officer (**Hearings Officer**) denied and dismissed Alpha's Request and affirmed BWS's determination that Alpha's bid was nonresponsive. Alpha appealed the Hearings Officer's decision to the Circuit Court of the First Circuit (**Circuit Court**).[1]  After further briefing and a hearing, the Circuit Court affirmed the Hearings Officer's decision.

Alpha appeals from the September 6, 2022 "Final Judgment" (**Judgment**), entered in favor of BWS and Beylik and against Alpha by the Circuit Court.  Alpha also challenges the Circuit Court's September 6, 2022 "Order Affirming Hearing[s] Officer's Decision Re: Board of Water Supply, City and County of Honolulu's Award" (**Order**).

On appeal, Alpha contends that the Circuit Court erred in affirming the Hearings Officer's determination that Alpha's bid was nonresponsive and in "declining to determine that BWS violated Alpha's [e]qual [p]rotection [r]ights[.]"  BWS disputes these contentions and argues, preliminarily, that the OAH exercised subject matter jurisdiction over this matter in excess of its statutory authority.  Beylik joins BWS's arguments.

We hold that the Hearings Officer properly exercised subject matter jurisdiction over the Request under Hawaii Revised Statutes (**HRS**) § 103D-709(a) (Supp. 2021), which expressly confers jurisdiction on OAH's hearings officers "to review and determine de novo, any request from any bidder, offeror, contractor . . . aggrieved by a determination of the chief procurement officer, head of a purchasing agency, or a designee of either officer under section 103D-310, 103D-701, or 103D-702." Here, the Hearings Officer correctly concluded that Alpha was aggrieved by BWS's determination, among others, that Alpha's bid was nonresponsive, conferring subject matter jurisdiction on OAH to review and determine the Request.  We reject BWS's argument that the Hearings Officer lacked such jurisdiction under HRS § 103D-709(d)(2) (Supp. 2021) because Alpha's protest did not concern a matter that was "equal to no less than 10% of the

_____

[1]    The Honorable James H. Ashford presided.

estimated value of the contract."  HRS § 103D-709(d)(2) does not define the subject matter jurisdiction of OAH hearings officers, but, rather, concerns the parties that may initiate a proceeding under HRS § 103D-709(d), and the circumstances under which they may do so.  Thus, subsection (d) concerns standing to initiate such a proceeding, which is a prudential consideration rather than an issue of subject matter jurisdiction.

We further hold that the Circuit Court did not err in affirming the Hearings Officer's determination that Alpha's bid was nonresponsive at the time of bid opening for failure to list an intended subcontractor.  Alpha has not shown that this determination was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.  Alpha's equal protection argument, which was not raised in its protest to BWS or in its administrative appeal to OAH, was waived.

Accordingly, we affirm the Judgment.

## I.  Background

The following background is drawn primarily from the findings of fact (**FOFs**) contained in the "Hearings Officer's Findings of Fact, Conclusions of Law, and Decision" (**Decision**), filed on July 26, 2022:[2]

> 1.  On April 2022, BWS posted its Invitation for Bids ("IFB" or "Solicitation") soliciting sealed bids for Job 22-001; Kunia Wells IV Exploratory Wells, which involved the installation of three (3) exploratory wells and appurtenances (the "Project").
>
> 2.  The Solicitation *required* a line-item lump sum price for *Tree removal and trimming*.
>
> 3.  The General Instructions to Bidders, paragraph 1.1 B, Qualification of Bidders *required that a joint venture bidder submit a copy of their notification* - to the Contractor's License Board of their intent to form a joint venture to bid on a project - *with its bid*:
>
>> Partnership; Joint Venture. In accordance with Section 16-77-13, Hawaii Administrative Rule, Title 16, Chapter 77, Contractors of the Department of Commerce and Consumer Affairs, contractors shall notify the Contractors'

---

[2]     Alpha has not challenged the FOFs, which are therefore binding on appeal.  See Poe v. Haw. Labor Rels. Bd., 97 Hawaiʻi 528, 536, 40 P.3d 930, 938 (2002) (ruling that an agency's unchallenged findings are binding on appeal).

Licensing Board of their intent to form a joint venture or partnership to bid on a project. **A copy of this notification** to the Contractors' Licensing Board **shall** be submitted with the bid.

("Joint Venture Notice").

4. The Solicitation states in relevant part:

29.8 CLEARING

B. Prior to removal or trimming of trees **by a contractor with a valid C-27/27[b] license**, a bird nest survey will be conducted by a biologist provided by the BWS. If any nests are found, the biologist will be responsible for monitoring the active nests during construction. **The Contractor shall coordinate work as necessary with the biologist** to ensure that any active nests remain undisturbed.

5. On May 6, 2022, Alpha submitted its Bid Proposal in the amount of $5,969,235.00. Alpha listed a lump sum price of $95,000.20 for *Tree removal and trimming work*. Alpha did *not* list a subcontractor for *Tree removal and tree trimming work*.

6. Alpha does not hold a C-27 *Landscaping* Contractor or a C-27b *Tree Trimming and Removal* Contractor license. Alpha does hold licenses in the "A" General Engineering, "B" General Engineering, and specialty licenses C-17 *Excavating, Grading, and Trenching* Contractor and C-57 *Well* Contractor classifications, among others.

7. On May 6, 2022, [Beylik] submitted its Bid Proposal in the amount of $5,977,000.00. [Beylik] did *not* include a copy of their Joint Venture Notice. [Beylik] listed a lump sum price of $84,000.00 for *Tree removal and trimming work*. [Beylik] listed subcontractor Imua Landscaping, license type C-27, C-27B, for *Tree removal and tree trimming* work.

8. On May 13, 2022, BWS informed [Beylik] that BWS was awarding the subject contract to [Beylik] and posted notice of its *intent* to award the contract to [Beylik].

9. By letter dated May 17, 2022 ("Bid Rejection Letter"), BWS rejected Alpha's Bid as being *nonresponsive* pursuant to HRS §103D-302 and [Hawaii Administrative Rules (**HAR**)] §3-122-33 for failure to list a C-27 Landscaping Contractor and/or C-27b Tree Trimming and Removal Contractor. BWS'[s] letter also stated that "[a] joint contractor or subcontractor performing less than or equal to one percent of the total bid amount is not required to be listed in the proposal." BWS asserted that Alpha's lump sum price of $95,000.20 for the Project's Line-Item No. 1 – Tree Removal and Tree Trimming – is *more than* 1% of Alpha's total bid amount of $5,969,235.00, and therefore, requires a specialty contractor to be listed.

10. By letter dated May 18, 2022 ("Protest Letter"), Alpha submitted its Protest to BWS specifically protesting the following:

(1) The premature electronic notification by the City and County of Honolulu (the "City") posted on May 13, 2022, that the City intends to

4

> award the contract arising out of the IFB . . . to [Beylik] rather than Alpha, the lowest responsive and responsible bidder, without first providing written notification to Alpha that the City deemed Alpha's bid for the Project to be nonresponsive;
>
> (2) The City's incorrect determination in its letter of May 17, 2022 . . . that Alpha was required to list a specialty contractor in its bid for the Projects "[t]ree removal and trimming" scope of work, and its resulting incorrect determination that Alpha's bid was nonresponsive; and
>
> (3) The City's failure to reject [Beylik]'s bid as nonresponsive since the entity did not, as required by the IFB, attach a notice to the State of Hawaii Contractor License Board (the "CLB") of its intent to form a joint venture to bid on a project.

11. In its Protest Letter, Alpha also indicated, among other things, that *in reality* it *intended* to subcontract the "tree trimming" portion of the *Tree trimming and removal* line item to Cohen Landscaping and Design, Inc. ("Cohen") which was less than 1% of the [c]ontract value, and that Alpha intended to self-perform the "tree removal" portion of the work.

> In reality, . . . Alpha intends to subcontract only the small-dollar "tree trimming" portion of that line item – which is well less than 1% of the ontract value. The "tree removal" portion of the work is to be self-performed by Alpha.
>
> * * *
>
> . . . the "tree trimming" scope of work constituted just $6,806.28 of the $95,000.20 listed for the "Tree removal and trimming" line item[.]

12. On May 18, 2022, BWS emailed the Executive Officer of the Contractors License Board regarding the subject Solicitation and Protest Letter and *requested guidance to clarify the required license to perform* <u>*tree stump and root ball*</u> *removal work*[.]

. . . .

13. On May 20, 2022, at the request of BWS and in response to Alpha's Protest Letter, [Beylik] acknowledged to BWS that it did not submit a copy of its Joint Venture Notice with its Bid. [Beylik] provided information to BWS that it had received approval for its joint venture from the CLB on November 19, 2021, *prior* to Bid opening, which was a matter of public record. [Beylik] requested that its inadvertent mistake be *waived* because it was technical/clerical in nature and is not material because it does not affect price, quality, or quantity.

. . . .

14. On June 7, 2022, the Executive Officer of the Contractor's License Board replied to BWS'[s] May 18, 2022 email with an *unofficial opinion* that *an "A" General*

*engineering or C-17 Excavating, grading, and trenching specialty license could also do the work, as clearing and grubbing is included with these licenses*[.]

. . . .

15. By letter dated June 7, 2022 ("Protest Denial Letter"), BWS *denied* Alpha's Protest determining that:

A. **Alpha' [sic] bid is nonresponsive because it failed to list a licensed subcontractor for the tree removal work, and Alpha cannot self-perform this work as it does not possess a C-27 or C-27b license as required.**

B. **Alpha lacks standing to protest [Beylik]'s bid, but even if it did, [Beylik]'s bid was acceptable.**

C. **There is no requirement to issue a nonresponsive determination before a notice of intent to award.**

(Record references, footnotes, and some emphasis omitted.)

On June 14, 2022, Alpha filed the Request in OAH to contest the Protest Denial Letter, pursuant to HRS § 103D-709 and HAR § 3-126-42. Alpha argued that: 1) Alpha's bid was responsive because Alpha was entitled to self-perform the tree removal work for the Project under its C-17 license; (2) Beylik's bid was nonresponsive because it did not include a Joint Venture Notice; and 3) BWS violated the Procurement Code by issuing a notice of intent to award the Project before rejecting Alpha's bid.

On June 22, 2022, BWS filed a motion to dismiss for lack of jurisdiction, or in the alternative, for summary judgment. Beylik filed a motion to intervene and, on June 24, 2022, a substantive joinder to BWS's motion.

In its motion to dismiss, BWS asserted that under HRS § 103D-709(d)(2) (quoted infra), OAH lacked jurisdiction over the Request because it did not concern a matter that was "equal to no less than 10% of the estimated value of the contract." In its motion for summary judgment, BWS argued that: (A) the Request should be dismissed for lack of jurisdiction for failure to meet the ten percent amount-in-controversy requirement; (B) summary judgment was appropriate because it was undisputed that Alpha's bid failed to list all subcontractors as required and no exceptions were made; and (C) the Request should also be dismissed as to the award to Beylik.

6

On June 24, 2022, Alpha filed a motion for summary judgment on the following bases: (1) the Procurement Code did not permit BWS to reject Alpha's bid on the basis that Alpha, as a C-17 licensee, lacked the necessary license to perform the Project's tree removal work; (2) the Hearings Officer lacked jurisdiction over BWS's contention that it could, and/or properly did, reject Alpha's bid on the basis that BWS had the discretion to disqualify a bidder for failing to list a subcontractor whose scope of work was less than 1% of the bid price, or, alternatively, BWS was estopped from making that argument; (3) Beylik's bid was nonresponsive; and (4) the Hearings Officer had jurisdiction to consider Alpha's Request.

On July 5, 2022, the Hearings Officer heard the matter. Alpha's motion for summary judgment and BWS's motion to dismiss or for summary judgment were denied. The Hearings Officer took jurisdiction over the matter without prejudice as to the parties claims and defenses. A further hearing was held on July 14 and 15, 2022, and numerous exhibits were admitted into evidence.

On July 26, 2022, the Hearings Officer issued the Decision. As relevant here, the Hearings Officer: (1) denied BWS's motion to dismiss or in the alternative for summary judgment; (2) denied Alpha's motion for summary judgment; (3) denied and dismissed with prejudice Alpha's Request; and (4) affirmed "[BWS's] determinations as stated in its Protest Denial Letter[,]" which the Hearings Officer set forth in FOF 15, quoted above, and which included the determination that Alpha's bid was nonresponsive.

On August 5, 2022, Alpha filed a notice of appeal in the Circuit Court seeking reversal of the Decision and remand to the Hearings Officer with instructions to order BWS to award the Project to Alpha. Alpha filed its opening brief on August 17, 2022.

On August 23, 2022, BWS filed its answering brief, arguing in part that OAH improperly exercised subject matter jurisdiction because the Request failed to meet the 10% jurisdictional threshold. On the same date, Beylik filed its answering brief.

7

The Circuit Court heard the matter on August 31, 2022, and entered the Order and Judgment on September 6, 2022, which affirmed the Hearings Officer's Decision.

This secondary appeal followed.

## II.  Standards of Review

The appellate standard of review of an administrative hearings officer's decision is set forth in HRS § 103D-710(e) (2012).  See Certified Construction, Inc. v. Crawford, 138 Hawaiʻi 315, 319, 382 P.3d 127, 131 (2016) (citing S. Foods Grp., L.P. v. State, Dep't of Educ., 89 Hawaiʻi 443, 452, 974 P.2d 1033, 1042 (1999)).  HRS § 103D-710(e) provides in relevant part:

> No later than thirty days from the filing of the application for judicial review, based upon review of the record the circuit court may affirm the decision of the hearings officer issued pursuant to section 103D-709 or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if substantial rights may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1)    In violation of constitutional or statutory provisions;
>
> (2)    In excess of the statutory authority or jurisdiction of the chief procurement officer or head of the purchasing agency;
>
> (3)    Made upon unlawful procedure;
>
> (4)    Affected by other error of law;
>
> (5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion[.]

HRS § 103D-710(e).

"The existence of jurisdiction is a question of law that this court reviews de novo under the right/wrong standard." Crawford, 138 Hawaiʻi at 319, 382 P.3d at 131 (brackets omitted) (quoting Pac. Lightnet, Inc. v. Time Warner Telecom, Inc., 131 Hawaiʻi 257, 272, 318 P.3d 97, 112 (2013)).

8

## III.  Discussion

### A.  Jurisdiction of the Hearings Officer

BWS contends that OAH exercised subject matter jurisdiction over this matter in excess of its statutory authority.  In particular, BWS argues that "OAH lacked jurisdiction for failure to meet HRS § 103D-709(d)(2)'s matter in controversy requirement."

HRS § 103D-709 states, in relevant part:

> **Administrative proceedings for review.**  (a) The several hearings officers appointed by the director of the department of commerce and consumer affairs pursuant to section 26-9(f) shall have jurisdiction to review and determine de novo, any request from any bidder, offeror, contractor, or person aggrieved under section 103D-106, or governmental body aggrieved by a determination of the chief procurement officer, head of a purchasing agency, or a designee of either officer under section 103D-310, 103D-701, or 103D-702.
>
> . . . .
>
> (c) Only parties to the protest made and decided pursuant to sections 103D-701, 103D-709(a), 103D-310(b), and 103D-702(g) may initiate a proceeding under this section. . . .
>
> (d) Any bidder, offeror, contractor, or person that is a party to a protest of a solicitation or award of a contract under section 103D-302 or 103D-303 that is decided pursuant to section 103D-701 may initiate a proceeding under this section; provided that:
>
> > (1)   For contracts with an estimated value of less than $1,000,000, the protest concerns a matter that is greater than $10,000; or
> >
> > (2)   For contracts with an estimated value of $1,000,000 or more, the protest concerns a matter that is equal to no less than ten per cent of the estimated value of the contract.
>
> . . . .
>
> (k) As used in this section, "estimated value of the contract" or "estimated value", with respect to a contract, means the lowest responsible and responsive bid under section 103D-302, or the bid amount of the responsible offeror whose proposal is determined in writing to be the most advantageous under section 103D-303, as applicable.

In the OAH proceeding, BWS contended that under HRS § 103D-709(d)(2), OAH lacked jurisdiction over the Request because it did not concern a matter that was "equal to no less than 10% of the estimated value of the contract."  BWS argued that no matter what metric was used — intended subcontractor

Cohen's quote of $6,806.28 for tree trimming work, or Alpha's line-item entry of $95,000.20 for tree trimming and removal work — both were less that 10% of Alpha's bid of $5,969,235.00. Thus, BWS contended that Alpha did not meet the minimum 10% amount-in-controversy requirement for jurisdictional purposes. BWS made the same argument to the Circuit Court — and makes substantially the same argument on appeal.

Alpha, on the other hand, asserted that its Request contested: "1) the complete rejection of its Bid (for failure to list a C-27 or C-27b subcontractor) and that Alpha was properly licensed to self-perform the tree removal work; 2) the acceptance of [Beylik]'s Bid (which was allegedly nonresponsive for failure to include a copy of their Joint Venture Notice); and 3) BWS'[s] alleged violation of the [Procurement] Code for issuing its notice of intent to award *before* making its nonresponsive determination of Alpha's Bid." Relying on <u>Nan, Inc. v. HART</u>, Case No. PDH-2015-004 (Off. Admin. Hearings, Haw. Dep't Com. & Consumer Aff. May 28, 2015) (Hearings Officer's Findings of Fact, Conclusions of Law, and Decision), Alpha argued that "[t]he language of HRS § 103D-709(d) 'supports accumulation or aggregation of claims as long as the total exceeds the minimum jurisdictional amount.'" Alpha further argued that its challenge to the responsiveness of Beylik's bid was a direct challenge to the entire bid that exceeded the 10% requirement. Alpha made the same argument to the Circuit Court – and makes substantially the same argument on appeal.

The Hearings Officer rejected BWS's jurisdictional argument as follows:

> The Hearings Officer is persuaded by Alpha's position on the issue of *jurisdiction* to hear the *[Request]* and DENIES BWS'[s] Motion to Dismiss for failure to meet the minimum 10% amount in controversy. This *matter* does not merely/only concern the failure to list a less-than-1% tree trimming subcontractor, but also alleges: 1) that BWS wrongfully rejected Alpha's Bid - for failure to list a C-27 or C-27b subcontractor - because Alpha, as a C-17 Contractor, *could* legally *self-perform* the work; 2) that [Beylik]'s Bid was nonresponsive for failure to submit a required Joint Venture Notice; and 3) that BWS violated the Code by issuing its notice of intent to award *before* making its nonresponsive determination of Alpha's Bid.
>
> . . . .

> As noted above, Section 103D-709(a) of the Code specifically confers *jurisdiction* on the *DCCA hearings officers* to determine *de novo, any request from any bidder, offeror, contractor . . . aggrieved by a determination of the chief procurement officer*.
>
> Alpha was certainly "aggrieved" by the *determinations* of BWS'[s] chief procurement officer in that Alpha s low Bid was rejected as nonresponsive, whereas [Beylik]'s Bid was accepted notwithstanding it failed to submit a copy of its Joint Venture Notice. Additionally, Alpha alleges that BWS violated the Code by issuing its intent to award the contract to Intervenor BEFORE rejecting Alpha's Bid as nonresponsive. These claims, *in the aggregate* confer jurisdiction on the OAH. All Parties have cited to the Code *and Decisions by OAH* in support of their respective positions. OAH most certainly has *jurisdiction* in this matter.
>
> To be clear, however, having determined that OAH has *jurisdiction* to hear the [Request] *does not* mean that this Hearings Officer cannot dismiss a cause or causes of action, for failure to meet the Section 103D-709(d) 10% minimum amount in controversy. Or determine that Alpha lacks *standing* to challenge BWS'[s] intent to award the contract to [Beylik]. However, those are matters subject for hearing on the *merits*.
>
> Accordingly, the Hearings Officer concludes that OAH has *jurisdiction* to hear the *[Request]*. . . .

In Alpha's primary appeal, it appears that the Circuit Court declined to address BWS's argument that the OAH lacked jurisdiction over Alpha's Request. However, the Circuit Court did address "Beylik's [j]urisdictional [a]rgument," stating:

> [Beylik's] arguments presented addressed the Hearing[s] Officer's jurisdiction, not this Court's jurisdiction. The Hearing[s] Officer's jurisdiction is not the subject of Alpha's appeal, and there is no cross appeal that puts the Hearing[s] Officer's jurisdiction at issue in this case. Therefore, this issue has been waived due to its non-appeal.

On appeal to this court, Alpha similarly contends that BWS waived its jurisdictional argument by not filing a cross-appeal raising the issue in the Circuit Court or this court.

"If a court lacks jurisdiction over the subject matter of a proceeding, any judgment rendered in that proceeding is invalid." Bush v. Hawaiian Homes Comm'n, 76 Hawaiʻi 128, 133, 870 P.2d 1272, 1277 (1994). Accordingly, "subject matter jurisdiction may not be waived and can be challenged at any time." Curtis v. Bd. of Appeals, Cnty. of Haw., 90 Hawaiʻi 384, 393, 978 P.2d 822, 831 (1999) (quoting Pub. Access Shoreline Haw. v. Haw. Cnty. Plan. Comm'n., 79 Hawaiʻi 425, 431, 903 P.2d 1246,

11

1252 (1995)); see also Bush, 76 Hawai'i at 133, 870 P.2d at 1277 ("[A] question [of subject matter jurisdiction] is valid at any stage of the case, and though a lower court is found to have lacked jurisdiction, we have jurisdiction here on appeal, not of the merits, but for the purpose of correcting an error in jurisdiction." (quoting Chun v. Emps.' Ret. Sys., 73 Haw. 9, 14, 828 P.2d 260, 263 (1992))). These same principles apply to the jurisdictional issue raised by BWS in this case. If OAH lacked subject matter jurisdiction over Alpha's Request, the Decision was invalid. Thus, BWS's challenge to OAH's jurisdiction, which BWS asserted in the Circuit Court and now asserts in this court, has not been waived and may be addressed by this Court. See HRS § 103D-710(e).

HRS § 103D-709 sets out the procedural requirements for administrative review by OAH hearings officers in these circumstances. In construing HRS § 103D-709, "our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself, and we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." Tax Found. of Haw. v. State, 144 Hawai'i 175, 193, 439 P.3d 127, 145 (2019) (citing In re Doe, 95 Hawai'i 183, 191, 20 P.3d 616, 624 (2001)).

HRS § 103D-709(a) expressly confers jurisdiction on OAH's hearings officers "to review and determine de novo, any request from any bidder, offeror, contractor . . . aggrieved by a determination of the chief procurement officer, head of a purchasing agency, or a designee of either officer under section 103D-310, 103D-701, or 103D-702." Here, as the Hearings Officer correctly concluded, "Alpha was certainly 'aggrieved' by the determinations of BWS'[s] chief procurement officer in that Alpha's low Bid was rejected as nonresponsive, whereas [Beylik]'s Bid was accepted notwithstanding it failed to submit a copy of its Joint Venture Notice." HRS § 103D-709(a) thus conferred subject matter jurisdiction on the Hearings Officer to review and determine Alpha's Request.

In contrast, HRS § 103D-709(d) does <u>not</u>, by its express terms, purport to define the <u>jurisdiction</u> of OAH hearings officers.[3/]  Rather, HRS § 103D-709(d) concerns the parties that may initiate a proceeding under HRS § 103D-709, and the circumstances under which they may do so.  In short, HRS § 103D-709(d) appears to concern the standing requirements to initiate a proceeding under section 103D-709.  <u>See</u> <u>Citizens for Protection of North Kohala Coastline v. Cnty. of Haw.</u>, 91 Hawaiʻi 94, 100, 979 P.2d 1120, 1126 (1999) ("As a general rule, standing is the aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated." (quoting <u>Hawaiʻi's Thousand Friends v. Anderson</u>, 70 Haw. 276, 281, 768 P.2d 1293, 1298 (1989)) (brackets and internal quotation marks omitted)); <u>Sierra Club v. Dep't of Trans.</u>, 115 Hawaiʻi 299, 318, 167 P.3d 292, 311 (2007) ("Standing is concerned with whether the parties have the right to bring suit." (quoting <u>Pele Def. Fund v. Puna Geothermal Venture</u>, 77 Hawaiʻi 64, 67, 881 P.2d 1210, 1213 (1994))).

The legislative history of HRS § 103D-709(d) does not shed any further light on subsection (d)'s purpose.  In 2009, the legislature passed Act 175, which amended the Procurement Code by, among other things, adding a new subsection (d) to HRS § 103D-709, whose language was identical to that of the current subsection (d).  <u>See</u> 2009 Haw. Sess. Laws Act 175, § 9 at 703-04.  This predecessor subsection (d), along with certain other amendments made by Act 175, was set for repeal on July 1, 2011.  <u>See</u> <u>id.</u> § 14 at 705.  The pertinent conference committee report on the 2009 legislation stated in part:

> Your Committee on Conference has amended this bill by:
>
> . . . .
>
> (8)    Providing that persons protesting the solicitation or award of a contract under the bid or request for proposals procedures of section 103D-302 or 103D-303,

_____

[3/]    Compare, for example, 28 U.S.C. § 1332(a)(1) (2023), which expressly provides for federal diversity jurisdiction in part as follows: "The district courts shall have original <u>jurisdiction</u> of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" (Emphasis added and formatting altered).

HRS:

(A)   May request an administrative review if:

  (i)   The contract has an estimated value of less than $1,000,000 and the protest concerns a matter that is greater than $10,000; or

  (ii)  The contract has an estimated value of $1,000,000 or more, and the protest concerns a matter equal to no less than ten percent of the contract[.]

Conf. Comm. Rep. No. 45, in 2009 House Journal, at 1595-96.  In 2012, the legislature passed Act 173, which further amended the Procurement Code and reenacted HRS § 103D-709(d), as well as certain other "sunseted" amendments made by Act 175.  Conf. Comm. Rep. No. 62-12, in 2012 House Journal, at 1630; see 2012 Haw. Sess. Laws Act 173 § 3 at 609-10.  HRS § 103D-709(d) was reenacted without any further statement of purpose.

In construing HRS § 103D-709(d), the hearings officer in Air Rescue Sys. Corp. v. Fin. Dep't, Cnty. of Haw., Case No. PDH-2012-006 (Off. Admin. Hearings, Haw. Dep't Com. & Consumer Aff. Dec. 10, 2012) (Hearing[s] Officer's Findings of Fact, Conclusions of Law, and Decision), stated:

> The Hearings Officer believes that the legislative intent behind the minimum threshold amount requirement was to eliminate protests over matters of a very small amount.  In the past, it was possible that a successful protest over a minor portion of a bid could result in the disallowance of the entire bid.  At the very least, such a protest could tie up procurement amidst the uncertainty over whether a minor error could delay and ultimately detrimentally affect the entire procurement process.

Id. at 14; see Greenpath Techs., Inc. v. Dep't of Fin., Cnty. of Maui, Case No. PCH-2014-002, at 22 (Off. Admin. Hearings, Haw. Dep't Com. & Consumer Aff. Mar. 20, 2014) (Hearings Officer's Findings of Fact, Conclusions of Law, and Decision) (quoting Air Rescue).  There does not appear to be any specific legislative history supporting this theory of the purpose of HRS § 103D-709(d).  In any event, the theory is consistent with the conclusion that subsection (d) concerns standing to initiate a proceeding under section 103D-709.

"In Hawaiʻi state courts, standing is a prudential consideration regarding the proper — and properly limited — role of courts in a democratic society and is not an issue of subject

matter jurisdiction . . . ."  Tax Found., 144 Hawaiʻi at 188, 439 P.3d at 140 (internal quotation marks omitted) (citing Life of the Land v. Land Use Comm. of Hawaii, 63 Haw. 166, 172, 623 P.2d 431, 438 (1981)).  Similarly, here, we conclude that HRS § 103D-709(d) — which by its terms does not define the subject matter jurisdiction of OAH hearings officers but, rather, focuses on the parties that may initiate a proceeding under HRS § 103D-709 — concerns standing as a prudential consideration rather than as an issue of subject matter jurisdiction.  As discussed above, Alpha's Request met the jurisdictional requirements of HRS § 103D-709(a).  Accordingly, the Hearings Officer properly exercised subject matter jurisdiction over the Request under HRS § 103D-709(a).[4]

## B.  The Determination that Alpha's Bid was Nonresponsive

Alpha contends that the Circuit Court erred by affirming the Hearings Officer's determination that Alpha's bid for the Solicitation was nonresponsive.

In the Decision, the Hearings Officer determined that "Alpha's Bid was nonresponsive *at the time of bid opening*" due to its failure to list "*all* subcontractors regardless of percentage of work[,]" and "Alpha did not obtain a waiver of its failure to list subcontractor Cohen."  In reaching these conclusions, the Hearings Officer reasoned that: (A) "HRS § 103D-302(b)[5] *requires* that for construction bids, the names of *all subcontractors* shall

---

[4]     We note that in its answering brief, BWS does not separately contest Alpha's standing — or analyze the legal consequence of any lack of standing — to initiate the proceeding before the OAH, based on Alpha's alleged failure to meet HRS § 103D-709(d)'s 10 percent requirement.

[5]     HRS § 103D-302(b) (2012) states:

> An invitation for bids shall be issued, and shall include a purchase description and all contractual terms and conditions applicable to the procurement.  If the invitation for bids is for construction, it shall specify that all bids include the name of each person or firm to be engaged by the bidder as a joint contractor or subcontractor in the performance of the contract and the nature and scope of the work to be performed by each.  Construction bids that do not comply with this requirement may be accepted if acceptance is in the best interest of the State and the value of the work to be performed by the joint contractor or subcontractor is equal to or less than one per cent of the total bid amount.

be included"; (B) "[t]he General Instructions to Bidders (Construction Services) affirms that *bidders* **shall** *comply with HRS 103D-302* and that bids which are not in compliance **may** be accepted if: 1) it is in the *best interest* of the public; and 2) the value of the work to be performed by the subcontractor is equal to or *less than one percent (1%) of the total bid amount*"; (C) "Alpha can self-perform a *portion* of the tree removal and trimming work" for the Project;[6/] (D) because "Alpha did not list Cohen or any other subcontractor for *tree trimming and removal work*[,] Alpha's Bid was nonresponsive *at the time of bid opening*"; (E) "Alpha did *not* request a *waiver* of their failure [to] list a subcontractor for tree removal and trimming work"; and (F) "BWS had the discretion to, but did *not* waive Alpha's failure [to] list a subcontractor for tree removal and trimming work." (Footnotes added.)

The Hearings Officer summarized his reasoning as follows:

> Thus, notwithstanding the Hearings Officer's conclusion that Alpha could legally do *some* of the *tree removal and trimming* work within the scope of their C-17 license, here, BWS alerted bidders that a C-27/27B contractor license was required. The Hearings Officer concludes that it is within the discretion of BWS to specify what type of specialty license is required for specific work on this Project. [Beylik]'s Bid listed a C-27/27B specialty subcontractor for tree removal and trimming work, Alpha's Bid did not. Alpha did not obtain a waiver of its failure to list subcontractor Cohen. Accordingly, the Hearings Officer concludes that Alpha has *not* established by a preponderance of the evidence that BWS's determination - that Alpha's bid is nonresponsive because it failed to list a licensed subcontractor for the tree removal work, and Alpha cannot self-perform this work as it does not possess a C-27 or C-27b license as required - was improper.

_____

[6/] Based on the documents and witness testimony presented at the hearing, the Hearings Officer further explained:

> [T]here is some *overlap* in the scope of work that a C-17 Excavation and a C-27/27B Landscaping contractor can legally perform *depending on the project*. The Hearings Officer concludes that *both* an "A" General engineering (which includes a C-17 Excavating, grading, and trenching specialty license) contractor **and/or** a C-27 Landscaping/C-27b Tree trimming and removal contractor can perform *tree removal* work. However, the Hearings Officer does *not* conclude that Alpha can self-perform *all* of the *tree removal and trimming* work *for this Project* for which the listing of a C-27/27B contractor was *required*. This is consistent with the "reality" of Alpha's position and CLB's interpretation of *scope of work*.

16

In affirming the Hearings Officer's determination, the Circuit Court ruled in part:[1]

> 11. With respect to the propriety of the BWS's determination, and the Hearing[s] Officer's concurrence, that Alpha's bid was nonresponsive at the time of bid opening:
>
> a. The Hearings Officer determined that the "IFB and Addendum 2 puts Alpha on notice that a C-27/27[b] license is required for the tree removal and trimming work." Decision at 13; 21. The Court does not disagree with this, as that is a reasonable interpretation of the bid solicitation.
>
> b. Alpha was not a C-27/27b licensee and Alpha did not identify a C-27/27b licensee to perform the tree trimming and tree removal work.
>
> c. The only subcontractor identified by Alpha in its bid was Foundation International Inc., which does not hold a C-27/27b license.
>
> d. The BWS determined that a C-17 licensee (such as Alpha) could not perform the tree removal and tree trimming work for this particular project. The Hearings Officer agreed, in light of a host of factors, including comparing the scope of work for the C-17, C-27, and C-27b licenses; the particular, non-boilerplate environmental considerations and requirements for this Project; and the unofficial, nonbinding opinion of a single member of the Contractor's Licensing Board. The Court cannot find fault in the Hearing[s] Officer's determination that Alpha could not self-perform the work, particularly given the environmental concerns applicable to this Project.
>
> 12. It is clear to the Court that Alpha's bid was nonresponsive at the time of bid opening. The BWS's and the Hearing[s] Officer's determinations on this topic were correct.

On appeal, Alpha asserts the following two points of error regarding the determination that Alpha's bid for the Solicitation was nonresponsive:

> (1) In light of the facts that (a) the Hearings Officer determined that C-17 licensees can perform tree removal work, and (b) BWS'[s] Water System Standards, which were part of the Solicitation, provide that tree removal work is incidental to excavation work, the Circuit Court erred by affirming the Hearings Officer's determination that Alpha's bid for the Solicitation was nonresponsive, which the Hearings Officer based on his conclusion that BWS could decide after-the-fact that Alpha's C-17 excavation license was insufficient to permit it to self-perform the Solicitation's tree removal work and that instead a C-27 license was required.

---

[1] The Circuit Court's Order presents undifferentiated findings of fact and conclusions of law, which we refer to in this opinion as "FOFs/COLs."

(2) In light of the facts that (a) BWS's rejection of Alpha's bid was not based on Alpha's failure to list its tree trimming subcontractor, whose work amounted to less than 1% of the bid price; and (b) BWS's bid rejection letter specifically stated that bidders did not need to list subcontractors whose work amounted to less than 1% of the bid price, the Circuit Court erred by affirming the Hearings Officer's determination that Alpha's bid was nonresponsive for failing to list a subcontractor whose work amounted to less than 1% of the bid price.

At bottom, it appears that these somewhat confusing contentions are based on a distinction Alpha is drawing between tree-removal and tree-trimming work, and Alpha's related assertions that: (1) because Alpha could self-perform tree-removal work with its C-17 excavation license, it had no obligation to list a subcontractor for that work in its bid; and (2) because the value of the tree-trimming work was less than 1% of the overall bid amount, Alpha was not required to list a subcontractor for that work in its bid.

Alpha's contentions appear to be based on a "characterization of the Hearings Officer's findings" that the Circuit Court rejected. Specifically, the Circuit Court stated:

13. Alpha argues that the Hearings Officer concluded that Alpha proved that Alpha could self-perform the tree removal work. The Court disagrees with Alpha's characterization of the Hearings Officer's findings. The Hearings Officer merely stated that there is "some overlap" in the work that a C-17 licensee and a C-27/27b licensee "can legally perform depending on the project." Decision at 18. The Hearings Officer also stated that both types of licensees "can perform tree removal work," but more specifically stated that on this particular Project, Alpha cannot self-perform all of the tree removal and trimming, because a C-27/27b license is required. Id.

14. In other words, the Hearings Officer recognized that the BWS, as the Project owner, was entitled to specify what licensee it sought for the particular project, given the various concerns about minimal disturbance to existing vegetation, returning the site to its original condition or better, concern for existing birds' nests, the goal of minimal grading, etc., and therefore had the right to specify that the "intricate" skills or machinery of a "finesse" C-27/27b licensee were necessary for the particularized needs of this Project.

See also supra note 6. The Circuit Court's FOFs/COLs 13 and 14, which describe the Hearings Officer's related findings and conclusions in the Decision, are not clearly erroneous.

As set out above, in FOF/COL 11a, the Circuit Court "d[id] not disagree" with the Hearings Officer's determination

18

that the Solicitation put Alpha on notice that a C-27/27b license was required for the tree removal and trimming work for the Project.  We, too, agree that this is a reasonable interpretation of the Solicitation, which required a line-item lump sum price for "Tree removal and trimming" and expressly referred to "removal or trimming of trees by a contractor with a valid C-27/27[b] license."[8/]  It is undisputed that Alpha was not a C-27/27b licensee and did not identify in its bid a C-27/27b licensee to perform the tree removal and trimming work.

Further, in FOF/COL 11d, the Circuit Court "c[ould ]not find fault" in the Hearings Officer's determination that Alpha "could not perform the tree trimming and removal work for this particular project" under its C-17 license.  The Hearings Officer's conclusion in this regard was one of mixed fact and law based on his review of a "host of factors," including "the particular, non-boilerplate environmental considerations and requirements for this Project[.]"  Alpha has not shown that the Hearings Officer's conclusion was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.

Relying on a lone sentence in BWS's Bid Rejection Letter — that a subcontractor performing less than 1% of the total bid amount need not be listed in the bid (see Decision FOF 9, supra) — Alpha argues that BWS waived and is estopped from asserting any argument that Alpha was required to list Cohen, a

_____

[8/]     On appeal, Alpha argues that BWS's "Water System Standards" were part of the Solicitation (via double incorporation by reference) and allowed Alpha to perform tree removal work with its excavation license.  This argument was not raised in Alpha's protest to BWS or in Alpha's administrative appeal to OAH, and thus was not addressed in the Hearings Officer's Decision. Accordingly, the argument was waived.  See Hawaiian Dredging Constr. Co. v. Dep't of Transp., No. CAAP-11-0000299, 2013 WL 6244718, at *2 (Haw. App. Nov. 29, 2013) ("Hawai'i courts have consistently held that a court's review of an administrative agency's decision is limited to issues properly raised in the record of the administrative proceedings."); Waikiki Resort Hotel, Inc. v. City & Cnty. of Honolulu, 63 Haw. 222, 250, 624 P.2d 1353, 1372 (App. 1981) ("[T]he general rule that an appellate court will consider only such questions as were raised and reserved in the lower court applies on review by courts of administrative determinations so as to preclude from consideration questions or issues which were not raised in administrative proceedings."); Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 107, 58 P.3d 608, 618 (2002) (arguments not raised in the trial court are ordinarily deemed waived on appeal).

less than 1% contractor, in Alpha's bid.[9/] The Hearings Officer rejected this argument on the basis that the sentence at issue was a mistaken statement of the law, as BWS had to follow HRS § 103D-302(b), which requires the listing of all subcontractors regardless of percentage of work.[10/] The Hearings Officer further concluded that Alpha did not request or obtain a waiver, pursuant to HRS § 103D-302(b), of its failure to list subcontractor Cohen.

In Alpha's primary appeal, the Circuit Court addressed Alpha's waiver and estoppel arguments as follows:

> 18. Alpha argues that it was not legally required to seek a waiver from the BWS for Alpha's failure to list its C-27/27b subcontractor, and that the BWS and the Hearings Officer erred in not finding a waiver. The Court agrees that Alpha was not legally required to seek a waiver, but that is immaterial.
>
> 19. The facts remain that Alpha submitted a nonresponsive bid for failure to list an intended subcontractor in violation of HRS Section 103D-302(b); granting a waiver of that violation is discretionary; the BWS did not choose to waive the subcontractor listing requirement; and the record does not establish that a waiver was in the BWS's best interest.
>
> 20. The Court can find no fault with the BWS's decision to not grant a waiver.

---

[9/] Relying on the same language in BWS's Bid Rejection Letter, Alpha also asserts that BWS waived and is estopped from asserting any argument that Alpha was required to request a waiver of the subcontractor listing requirement. This argument was not raised in Alpha's protest to BWS or in Alpha's administrative appeal to OAH, and thus was not addressed in the Hearings Officer's Decision. Accordingly, the argument was waived. See supra note 8. In any event, whether Alpha was required to seek a waiver of the subcontractor listing requirement is immaterial for the reasons discussed infra.

[10/] In context, the sentence at issue appears to have been part of an introductory paragraph in the Bid Rejection Letter purporting to summarize applicable law. That paragraph stated:

> In accordance with [HRS] § 103D-302, each bidder shall include in its bid the name of each person or firm to be engaged by the Bidder on the project as a joint contractor or subcontractor also indicating the nature and scope of work to be performed by such joint contractor and/or subcontractor and their respective contractor's license number. A joint contractor or subcontractor performing less than or equal to one percent of the total bid amount is not required to be listed in the proposal. The Bidder shall be solely responsible for verifying that their joint contractor or subcontractor has the proper license at the time of the submitted bid.

During the July 2022 hearing before the Hearings Officer, Jadine Urasaki, Assistant Program Administrator, Capital Projects Division, for BWS, testified that the underlined sentence was a mistake.

. . . .

21. Estoppel requires that the estopped party does something that induces the other party to act in detrimental reliance on the estopped party's words or conduct. Thus, there can be no detrimental reliance unless the estopped party acts first, before the other party acts, because unless the estopped party acts first, there is nothing to rely on and there is no inducement.

22. Here, Alpha knew that the bid solicitation required that Alpha must list all subcontractors, and that a C-27/27b licensee was required, yet Alpha chose not to list Cohen as a subcontractor. In making that decision, Alpha could not possibly have relied on the BWS's later misstatement that 1% subcontractors need not be listed, because that later misstatement had not yet occurred when Alpha made its decision to omit Cohen. Alpha thus did not rely on the BWS's misstatement, so there can be no estoppel.

We agree based on the entire record that Alpha submitted a nonresponsive bid for failure to list an intended subcontractor, in violation of HRS Section 103D-302(b). See Okada Trucking Co. v. Bd. of Water Supply, 101 Hawaiʻi 68, 75, 62 P.3d 631, 638 (Haw. App. 2002) (ruling that a bid was nonresponsive when it "failed to list the name of the subcontractor that [the bidder] intended to use for the . . . work"). Although BWS had the discretion under section 103D-302(b) to accept Alpha's bid if acceptance was in the best interest of the State and the value of the work to be performed by the subcontractor was equal to or less than one per cent of the total bid amount, see Okada Trucking, 101 Hawaiʻi at 76, 62 P.3d at 639, BWS did not accept the bid, *i.e.,* it did not choose to waive the subcontractor listing requirement. Furthermore, Alpha has not shown, based on the lone sentence at issue in the Bid Rejection Letter, that the Hearings Officer's determination — that BWS did not waive[11] the subcontractor listing requirement — was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. For similar reasons,

_____

[11] The Hawaiʻi Supreme court has defined waiver as "an intentional relinquishment of a *known right*, a voluntary relinquishment of rights, and the relinquishment or refusal to use a right." Off. of Hawaiian Affs. v. Hous. & Cmty. Dev. Corp. of Haw. (OHA), 117 Hawaiʻi 174, 201, 177 P.3d 884, 911 (2008), *rev'd and remanded on other grounds*, 556 U.S. 163 (2009) (quoting Coon v. City & Cnty. of Honolulu, 98 Hawaiʻi 233, 261, 47 P.3d 348, 376 (2002)). "Since waiver is the intentional relinquishment of a known right, knowledge is an essential element of waiver." 31 C.J.S. Estoppel & Waiver § 106 (Aug. 2023 update) (footnote omitted). The question whether a valid waiver exists is generally a question of fact. OHA, 117 Hawaiʻi at 201, 177 P.3d at 911.

Alpha has not shown that the Hearings Officer's mixed conclusion of fact and law rejecting Alpha's estoppel argument, *i.e.*, Decision FOF/COL 22, was clearly erroneous.

In sum, Alpha has not shown that the Hearings Officer's determination — that Alpha's bid for the Solicitation was nonresponsive at the time of bid opening — was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.  Accordingly, the Circuit Court did not err in affirming this determination.

## C.  Alpha's Equal Protection Argument

Alpha contends that the Circuit Court erred "by declining to determine that BWS violated Alpha's [e]qual [p]rotection [r]ights when it refused to permit Alpha to perform tree removal work under its C-17 license despite having repeatedly allowed other C-17 licensees to perform tree removal work."

This mixed issue of fact and law was not raised in Alpha's protest to BWS or in Alpha's administrative appeal to OAH, and was thus not addressed in the Hearings Officer's Decision.  Although an administrative agency generally lacks power to pass upon the constitutionality of a statute, see HOH Corp. v. Motor Vehicle Indus. Licensing Bd., 69 Haw. 135, 141, 736 P.2d 1271, 1275 (1987), Alpha is not challenging the constitutionality of a Procurement Code provision, but is merely raising a claim that BWS violated Alpha's equal protection rights in treating Alpha differently from other C-17 licensees that were allegedly allowed to perform tree removal work.  Because Alpha failed to raise this mixed issue of fact and law before OAH, the argument was waived on appeal.  See Perry v. Bd. of Trs. of Emps. Ret. Sys., CAAP-11-0000052, 2012 WL 1382476, at *11 (Haw App. Apr. 20, 2012) (SDO) (because appellant failed to raise an alleged Contract Clause claim before the ERS, the circuit court correctly found that he had waived that argument on appeal (citing Waikiki Resort Hotel, 63 Haw. at 250, 624 P.2d at 1372)); Sato v. Dep't of Human Servs., No. CAAP-16-0000320, 2019 WL 1872931, at *2 (Haw. App. Apr. 26, 2019) (SDO) ("Waiver of an

issue not raised at the administrative level applies even to constitutional issues when appellant is not challenging the constitutionality of a statute or other rule."); see also HOH Corp., 69 Haw. at 143, 736 P.2d at 1276 ("When determination of the constitutional issue depends on factual determinations, they should be made first by the administrative officials who are especially equipped to inquire, in the first instance, into the facts." (quoting B. Schwartz, Administrative Law § 8.37, at 519 (2d ed. 1984))).

## IV. Conclusion

For the reasons discussed above, we affirm the September 6, 2022 Final Judgment, entered by the Circuit Court of the First Circuit.

On the briefs:

Jeffrey M. Osterkamp and
Kirk M. Neste
(Cades Schutte, LLLP)
for Petitioner-Appellant-
Appellant

Joseph A. Stewart,
Aaron R. Mun, and
Stephen G.K. Kaneshiro
(Kobayashi, Sugita & Goda, LLP)
for Respondent-Appellee-
Appellee

Lyle S. Hosoda,
Kourtney H. Wong, and
Spencer J. Lau
(Hosoda Law Group)
for Intervenor-Appellee-
Appellee

/s/ Katherine G. Leonard
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge